613 A.2d 606

**NORTHEASTERN GAS COMPANY, INC., Floyd C. Hoffman and Marian Hoffman, Appellants,**

**v.**

**FOSTER TOWNSHIP ZONING HEARING BOARD, Marvin J. Uryc and Clara I. Uryc, his wife, Foster Township Board of Supervisors, Appellees.**

Commonwealth Court of Pennsylvania.

Argued April 6, 1992.

Decided July 30, 1992.

478

Thomas J. Kennedy, for appellants.

Gino L. Andreuzzi, for appellees, Marvin J. and Clara I. Uryc.

Joseph R. Baranko, Jr., for appellees, Foster Tp. Zoning Hearing Bd.

George R. Hludzik, for intervenor, Foster Tp. Bd. of Sup'rs.

Before PALLADINO, and PELLEGRINI, JJ., and SILVESTRI, Senior Judge.

PALLADINO, Judge.

Northeastern Gas Company, Inc., Floyd E. Hoffman and Marian Hoffman (collectively, landowners) appeal an order of the Court of Common Pleas of Luzerne County (trial court) which affirmed the decision of the Foster Township Zoning Hearing Board (Board) denying landowners' application for a zoning permit to expand an allegedly existing nonconforming use of their property as a liquified petroleum (LP) gas storage facility.

Landowners own two parcels of land in a B–3 zone in the township on which their LP gas business is conducted. The first is a 1.77 acre parcel (parcel one) on which a trailer, a garage, a loading dock and a concrete pad for an eighteen thousand LP gas storage tank are located. The second is a 4.2 acre parcel (parcel two) on which a two story building containing garages, a retail sales office, an apartment, and office facilities is located. A concrete patio, driveways and concrete pads for storage tanks are also located on parcel two.

On August 6, 1974, the Board granted landowners a zoning permit to place an eighteen thousand gallon LP tank on parcel one as a nonconforming use. Bulk fuel storage is not a permitted use in a B–3 zone under the provisions of the township zoning ordinance. On June 14, 1990, landowners applied for a zoning permit to install four thirty thousand gallon LP tanks on parcel two. The application was denied by the township zoning officer. Landowners appealed to the Board which 1) found that the four tanks had already been

installed without a permit having been granted, 2) upheld the zoning officer's decision and 3) ordered that the four tanks be removed.

The trial court, without taking additional evidence, affirmed the Board. On appeal,[1] landowners raise the following issues: 1) whether section 801 of the Foster Township Zoning Ordinance, which regulates bulk fuel storage in the township, is unenforceable because the Liquefied Petroleum Gas Act (Gas Act)[2] preempts any attempt by the township to regulate the design, construction, location, installation and operation of equipment for the storage of LP gas; 2) whether landowners abandoned the nonconforming use of the property by changing the use of the property from the underground storage of fuel to the above-ground storage of a smaller amount of fuel; 3) whether landowners are entitled to expand a nonconforming use of parcel two by erecting structures for additional storage tanks on a portion of the property which was previously utilized for open air storage; 4) whether landowners are entitled to a variance from the special use requirement for bulk fuel storage, and 5) whether landowners have a vested right to a variance.

As to the first issue, landowners argue that section 5 of the Gas Act, 35 P.S. § 1325, operates to preempt the township from regulating the design, construction, location, installation and operation of equipment for the storage of LP gas. That section provides as follows:

No municipality or any other political subdivision shall adopt or enforce any ordinance or regulation in conflict with the provisions of this act or with the regulations promulgated under section two of this act.

Landowners argue that this section provides that municipal legislation with respect to the subject matter of the Gas Act is

1. Where, as here, the trial court took no additional evidence, our scope of review is limited to a determination of whether the Board abused its discretion or committed an error of law. *Kassouf v. Zoning Hearing Board of Scott Township and Township of Scott,* 112 Pa.Commonwealth Ct. 182, 535 A.2d 261 (1987).

2. Act of December 27, 1951, P.L. 1793, *as amended,* 35 P.S. §§ 1321–1339.

forbidden. In support of this argument landowners cite the supreme court's decision in *Western Pennsylvania Restaurant Association v. Pittsburgh*, 366 Pa. 374, 77 A.2d 616 (1951), in which the court stated that with respect to state preemption of municipal legislation there were three types of statutes. The three are as follows: 1) those statutes that "provide that nothing contained therein should be construed as prohibiting municipalities from adopting appropriate ordinances, not inconsistent with the provisions of the act or the rules and regulations adopted thereunder, as might be deemed necessary to promote the purpose of the legislation;" 2) those that "expressly provide that municipal regulation in regard to the subject covered by state act is forbidden;" and 3) those that "are silent as to whether municipalities are or are not permitted to enact supplementary legislation or to impinge in any manner upon the fields entered by the state." *Id.* at 380, 77 A.2d at 619.

Landowners argue that the Gas Act falls in the second category and that the legislature has forbidden municipal regulation in this instance. However, the plain language of section 5 contradicts landowners' argument because section 5 does not expressly provide that municipal regulation in regard to the subject covered by state act is forbidden. Instead, section 5 states that no municipality "shall adopt or enforce any ordinance or regulation *in conflict* with the provisions of this act or with the regulations promulgated under section two of this act." (Emphasis added).

In a more recent opinion, *Council of Middletown Township v. Benham*, 514 Pa. 176, 523 A.2d 311 (1987), the supreme court stated that "[t]otal preemption is the exception and not the rule." *Id.* at 184, 523 A.2d at 315. The court also stated that it has "found an intent to totally preempt local regulation in only three areas: alcoholic beverages, banking and strip mining." *Id.* at 182, 523 A.2d at 314. In analyzing whether the Pennsylvania Sewage Facilities Act[3] (Sewage Act) preempted a municipality from regulating sewage systems, the

3. Act of January 24, 1966, P.L. 1535 (1965), *as amended*, 35 P.S. §§ 750.1–.20.

court held that there was no preemption because the Sewage Act contained neither the express language of the strip mining act, nor the exhaustiveness of scope and tone of language of the liquor and banking laws.

■ The analysis of the supreme court in *Middletown* is applicable here. The Gas Act contains no express language, such as that found in the strip mining act, forbidding municipal regulation of the design, construction, location, installation and operation of equipment for the storage of LP gas, as landowners argue. Instead, as set forth above, the Gas Act only prohibits regulation that conflicts with the Gas Act itself or the regulations promulgated thereunder. Landowner does not point to any specific conflict between the Gas Act and the regulations promulgated pursuant thereto, which are found at 35 Pa.Code §§ 13.1–.111, and section 801 of the township ordinance, and we find no such such conflict.

Furthermore, comparison of the Gas Act with the language of the liquor and banking laws cited by the supreme court in *Middletown* reveals that the Gas Act, like the sewage act, contains neither the exhaustiveness of scope, nor the tone of language, of those laws. Therefore, we hold that the Gas Act does not preempt the township from regulating the design, construction, location, installation and operation of equipment for the storage of LP gas in the manner that it did in section 801 of the township ordinance.

We turn to the second issue raised by landowners which is whether the change in use of property from underground storage of fuel to above-ground storage of a smaller amount of fuel constitutes an abandonment of a nonconforming use.

Landowners assert that bulk fuel has been stored on parcel two since before 1979, prior to the existence of a zoning ordinance in the township, and that the valid nonconforming use of the property as a bulk fuel storage facility has never been abandoned. However, landowners admit that shortly after they purchased the property in 1979, they removed the existing underground diesel fuel tanks from the property. The Board found that after the underground diesel tanks had

been removed, the property was not used "for large quantities of bulk propane or fuel storage" until the above-ground tanks were installed in 1986, and held that the nonconforming use had therefore been abandoned pursuant to sections 508.3 and 509 of the ordinance. Board's opinion at 7. Sections 508.3 and 509 provide that a nonconforming use is abandoned if it is discontinued for a period of more than one year and no certificate of intention to continue the use has been filed.

Landowners argue that the Board ignored the uncontroverted testimony of landowner Hoffman that he used parcel two for above-ground bulk fuel storage between 1979 and 1986 by parking delivery trucks, storage vehicles and tank trucks, storing cylinders, and loading and unloading LP gas on the site. They argue that this testimony proves that the nonconforming use was not abandoned. Landowners contend that the township has failed to carry its burden of proving that an abandonment has occurred when its proof consists solely of the fact that the property is being used to store a smaller amount of fuel and because the fuel is being stored aboveground instead of underground. *See Feldman v. Zoning Hearing Board of the City of Pittsburgh*, 89 Pa.Commonwealth Ct. 237, 492 A.2d 468 (1985) (burden of proof of abandonment of a nonconforming use is on the municipality).

Landowners rely upon this court's decision in *Merion Park Civic Association v. Zoning Hearing Board of Lower Merion Township*, 109 Pa.Commonwealth Ct. 38, 530 A.2d 968 (1987), in which the court held that "minimal utilization of a use is sufficient to perpetuate its status as a non-conforming use". *Id.* at 42, 530 A.2d at 970. In *Merion*, the township zoning ordinance provided for a time limitation on the right to resume a nonconforming use similar to the one imposed in the township zoning ordinance in the case at bar, i.e. abandonment of nonconforming use presumed if use is discontinued for a period of more than one year and no certificate of intention to continue the use has been filed. The court in *Merion* held that although an intention to surrender the right to the use may be presumed from the expiration of the designated period, "it is still necessary ... to show overt actions or

failures to act demonstrating actual abandonment." *Id.* at 42, 530 A.2d at 970.

▉ In *Merion,* despite the fact that there had been a substantial diminution in greenhouse activity, the court held that because some activity was taking place and because that activity was related to the nonconforming use business, the municipality failed to prove as a matter of law that the use had been abandoned. *Merion* is controlling here because the facts in *Merion* parallel the facts of the case at bar. In both cases although there was a substantial diminution in the amount of the nonconforming use, the nonconforming use business activity continued. The Board erred when it held that the nonconforming use had been abandoned because the property had not been used for *"large quantities* of bulk propane or fuel storage". Board's Opinion at 7 (emphasis added). Therefore, we conclude that the township failed to prove that landowners abandoned the nonconforming use of the property as a bulk fuel storage area.

▉ We must next consider the third issue which is whether landowners' expansion of the nonconforming use was valid under the ordinance. As postulated by landowners, the question is whether landowners are entitled to expand a nonconforming use by erecting structures for additional storage tanks on a portion of the property which was previously utilized for open air storage. The Board found that landowners had expanded their nonconforming use onto an adjoining property (i.e. expansion from parcel one to parcel two) and that the expansion was greater than twenty-five percent of the initially allowed eighteen thousand gallon tank (situated on parcel one) in violation of sections 506(e) and 506(f) of the township zoning ordinance. Board's Opinion at 8. Section 506(e) provides that enlargement of nonconforming uses should not exceed the limits of the lot upon which the nonconforming use is located and section 506(f) provides that the expansion shall not exceed twenty-five percent of the land area as it existed at the time that the use first became nonconforming. The Board's findings were based on its conclusion that the nonconforming use on parcel two had been

abandoned and, in light of our conclusion to the contrary, those findings are not apposite here. Absent from the Board's opinion is a finding with respect to whether the four tanks on parcel two meet the requirement that the expansion not exceed twenty-five percent of the land area as it existed at the time the use first became nonconforming. Such a finding is necessary to the resolution of the issue of whether landowners' expansion meets the requirements of the ordinance. Therefore, the case must be remanded to the Board for a finding as to whether the expansion of parcel two exceeds the twenty-five percent limit.

The last two issues raised by landowners concern landowners' alternative argument that they are entitled to a use variance or a use variance by estoppel to continue their nonconforming use of parcel two. Because we have concluded that the landowners have a valid nonconforming use on parcel two, we need not address these issues.

Accordingly, we reverse and remand to the Board for a finding with respect to whether the four tanks on parcel two meet the requirement that the expansion not exceed twenty-five percent of the land area as it existed at the time the use first became nonconforming.

## ORDER

AND NOW, July 30, 1992, the order of the Court of Common Pleas of Luzerne County in the above-captioned matter is reversed and this case is remanded to the Foster Township Zoning Hearing Board for a finding with respect to whether the four tanks on parcel two meet the requirement that the expansion not exceed twenty-five percent of the land area as it existed at the time the use first became nonconforming. Jurisdiction is relinquished.

PELLEGRINI, Judge, dissenting.

I respectfully dissent. While I concur that the Liquified

Petroleum Gas Act [1] does not preempt local zoning regula-
tions, I dissent as to that portion of the majority's holding that
the Landowner has a right to operate a bulk fuel propane
facility as a continuation of a non-conforming use on property
previously used as a "gas station" because both involve fuel
storage.

Beginning the the 1960's, Northeastern Gas Company, Inc.,
Floyd C. Hoffman and Marian Hoffman (Landowners) operat-
ed a liquified petroleum storage facility and delivery business
as a non-conforming use on property then classified as an A–1
agricultural district (Parcel One).   In 1979, Landowners pur-
chased an adjoining 4.2 acre lot (Parcel Two).   The previous
owner had operated a "gas station" and junkyard on the
property.   On the property was located underground storage
tanks for the storage of gasoline and diesel fuel attendant to
the "gas station" use.   He also kept several one hundred
pound cylinders of liquid propane to sell to customers of the
"gas station."   When the Landowners purchased the property,
they removed the underground tanks.[2]   At the same time,
they began to use the property for their offices, parking of
their delivery and tank trucks and the storage of gas cylin-
ders.

In 1986, Foster Township (Township) adopted a new zoning
ordinance classifying both parcels as B–3 highway business
district.   In a B–3 district, bulk fuel storage is not a permitted
use.   Between 1986 and 1988, despite not being a permitted
use, Landowners installed four new 30,000 gallon above-
ground liquid propane tanks on the property.   After receiving
a cease and desist order from the Township zoning officer,
Landowners applied to the Foster Township Zoning Hearing
Board (Board) to continue the use because the liquid fuel
facility was merely the expansion of the pre-existing gas
station's non-conforming use, not a new and different one.
They contended that Parcel Two's use as a gas station consti-

1. Act of December 27, 1951, P.L. 1793, *as amended,* 35 P.S. §§ 1321–
1339.

2. The underground tanks removed consisted of a four thousand gallon
tank and 2 two thousand gallon tanks for the storage of gasoline, and a
thousand gallon tank for the storage of diesel fuel.

tuted a bulk fuel storage use. Because of their use of Parcel Two for their offices, parking of their delivery and tank trucks and storage of gas cylinders after their purchase in 1979, they contend that use was never abandoned. After a hearing, the Board denied the request which was affirmed by the trial court. This appeal followed.[3]

To be permitted to expand a non-conforming use, the property owner must first establish that the use he is proposing to expand is a valid and legal one. *O'Kane v. Zoning Hearing Board of Haverford Township,* 136 Pa.Commonwealth Ct. 188, 582 A.2d 716 (1990). The majority finds that the Landowners met this burden and reversed, based upon the following reasoning:

- Because the gas station had tanks for the storage of fuel, it can be considered the same use as a bulk storage facility.
- When Landowners, between 1979 and 1986, used the property for the parking of delivery trucks, storage vehicles, tank trucks and the storing of cylinders on Parcel Two, it was a continuation of an already preexisting non-conforming use.
- The request to add four 30,000 gallon above-ground storage tanks is merely an expansion of a preexisting non-conforming use.

The flaw in the majority's reasoning is that a gas station is not a bulk fuel storage facility. A gas station is where you sell fuel on site for automobiles and some incidental uses. A bulk storage facility is where enormous quantities of liquid fuel are stored on the site, delivered to customers in large vehicles to customers off site, and involve special safety and siting precautions.[4] More simply, a gas station is a retail use while bulk fuel storage is an industrial one.

3. Landowners also contend that they are entitled to a "variance by estoppel" because the Township knew or should have known of the erection of the four new 30,000 gallon tanks on the property. The majority did not address this issue since it found that Landowners had a valid non-conforming use. Because there was no showing that there was any official municipal acquiescence in the use of Parcel Two by the Township as a bulk fuel storage facility, I believe that Landowners did not establish their right to a variance by estoppel. *Crawford's Appeal,* 110 Pa.Commonwealth Ct. 51, 531 A.2d 865 (1987).

4. Section 801 of the Township zoning ordinance provides that:

Because Landowners' use of the property is not the continuation of a preexisting non-conforming use, I would affirm the decisions of the Board and the trial court.

**BULK FUEL STORAGE**
Bulk fuel storage shall be located on a tract of land of not less than five (5) acres. Storage tanks shall be located not less than one hundred (100) feet from any property line, and shall not be less than five hundred (500) feet from any dwelling, school, church or similar use. Cylinder filling rooms, pumps, compressors and truck filling stations shall be located at least one hundred (100) feet from all property lines. The tank storage area shall be fenced with an eight (8) foot high industrial type fence or equivalent protection. When the storage property abuts on the rear or side lot lines of a district having residences as a principal permitted use, a solid wall or substantial, attractive, tight fence six (6) feet in height shall be constructed and maintained in good condition along such boundary.
Bulk fuel storage facilities shall be developed in compliance with all applicable Federal, State and Insurance Regulations.