IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Deiter Family, L.P. | : |
| | : No. 202 C.D. 2015 |
| v. | : Argued:  September 17, 2015 |
| | : |
| City of Easton Building Code | : |
| Board of Appeals and City of | : |
| Easton and W.B. Moore, Inc. | : |
| | : |
| Appeal of:  City of Easton and City | : |
| of Easton Building Code Board of | : |
| Appeals | : |


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
                    HONORABLE ANNE E. COVEY, Judge
                    HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY SENIOR JUDGE FRIEDMAN                         FILED:  November 9, 2015


            The City of Easton (City) and the City of Easton Building Code Board of Appeals (Board) (together, Appellants) appeal from the January 27, 2015, order of the Court of Common Pleas of Northampton County (trial court) reversing the Board's decision to deny the request of Deiter Family, L.P. (Deiter) to install a 30,000-gallon propane storage tank on its property.[1]  The trial court held that the Propane and Liquefied Petroleum Gas Act (Act 61)[2] preempted City Ordinance §245-

---

[1] The Pennsylvania Propane Gas Association has filed an amicus brief in support of Deiter.

[2] Act of June 19, 2002, P.L. 421, No. 61, *as amended,* 35 P.S. §§1329.1-1329.19.

8G(11),[3] which limits storage of liquefied petroleum gas (LPG)[4] to 2,000-gallon tanks. The trial court further held that substantial evidence did not support the Board's determination that the proposed 30,000-gallon propane tank was dangerous. We affirm.

Since 1998, Deiter has owned property located at 1025 Bushkill Drive in Easton (Property). The Property is located in the Adaptive Reuse (AR) district,[5] which permits liquid fuels. The Property, which is in excess of one-half acre, is used for the storage and distribution of LPG and contains a Pacific Pride station. The Property has three 10,000-gallon underground storage tanks.

Deiter submitted an application to install one 30,000-gallon above-ground propane storage tank. The City Bureau of Codes and Inspections denied the application because the capacity of the proposed tank is greater than the 2,000-gallon limit permitted under City Ordinance §245-8G(11), which provides:

---

[3] The City has adopted the Uniform Construction Code (UCC), 34 Pa. Code §§401-405, but with a series of amendments and deletions. *See* City Ordinance §§245-4B and 245-8.

[4] Section 2 of Act 61 defines "LPG" as "[a]ny material in liquid form that is composed predominately of any of the following hydrocarbons or mixtures thereof:

(1) Propane.
(2) Propylene.
(3) Normal butane or isobutane.
(4) Butylenes."

35 P.S. §1329.2.

[5] The purpose of the AR district is "to promote the redevelopment and revitalization of underutilized and underperforming areas of the City with mixed residential and commercial uses and industrial development." §595-115A(1) of the City of Easton Zoning Ordinance.

2

> The bulk storage of [LPG] is prohibited within the entire City limits, excepting only those areas zoned for industrial uses. Within the limits established by law in the adopting ordinance restricting the storage of [LPG] for the protection of heavily populated or congested areas, the aggregate capacity of any one installation shall not exceed a capacity of 2,000 gallons.

On May 28, 2014, Deiter applied to the Board for a variance, arguing that Act 61 preempts City Ordinance §245-8G(11). At the Board hearing, Deiter presented evidence that the 47-foot-by-11-foot storage tank would be located at the rear of the lot with a 6-foot-high fence surrounding the storage tank. There would be a 20-foot rear setback and a 25-foot side-yard setback.

Deiter also introduced a "Preliminary Fire Safety Review" prepared by Daniel S. Watters, who concluded that the storage of propane is safe, acceptable, and appropriate.

Gerry Weslowski, Deiter's manager of propane services, testified that there are emergency shutoff valves and a backup system in case of an emergency. He testified that 9,000 gallons of propane would be delivered to the proposed 30,000-gallon storage tank twice each week.

The City's fire marshal testified that a 30,000-gallon storage tank would pose an undue risk to public safety. Specifically, in the case of an accident, there are not enough emergency resources available. The fire marshal discussed evacuations, roadblocks, and a condition known as boiling liquid expanding vapor explosion

3

(BLEVE), which is caused by the rupture of a storage unit containing pressurized liquid above its boiling point. The fire marshal showed a video of a BLEVE in Canada.

Cindy Cawley, Chief Code Administrator for the City, testified that the Property is less than 1,000 feet from Lafayette College and Route 22 and is heavily populated. W. Burns Moore, an abutting property owner, voiced his objection to the storage tank via a letter.

The Board determined that City Ordinance §245-8G(11) limits storage tanks to 2,000 gallons. The Board further concluded that Act 61 does not preempt City Ordinance §245-8G(11) because Act 61 does not regulate the capacity of a storage tank. Thus, the Board denied the variance.

On appeal, the trial court reversed, relying on *JoJo Oil Company, Inc. v. Dingman Township Zoning Hearing Board*, 77 A.3d 679 (Pa. Cmwlth. 2013), *appeal denied*, __ A.3d __ (Pa., No. 791 MAL 2013, filed April 2, 2014). In *JoJo Oil*, this court examined whether Act 61 preempted the special exception standards set forth in the municipality's ordinance. In that case, the applicant sought to install a bulk fuel transfer station in an RC-Resort/Commercial zoning district on a 3.3-acre tract of real estate. *Id.* at 682. "The proposed use would include two underground 20,000-gallon heating oil tanks, one above-ground 30,000-gallon propane tank, a truck-loading area and a turn-around." *Id.*

4

Because a bulk fuel transfer station was not permitted in any zoning district, the case proceeded to the "savings provision" of the ordinance. *Id.* The "savings provision" stated that when a use is not permitted in any district, the zoning hearing board (ZHB), via application, may permit or deny the use as a special exception. *Id.* The ZHB denied the applicant's request because of the small size of the parcel, traffic concerns, safety issues, and its close proximity to residences. *Id.* at 684-85, 690.

The trial court reversed, determining that the ZHB could not regulate setback and other safety issues by imposing different requirements than those set forth in Act 61. *Id.* at 690. On appeal, this court affirmed. This court stated that although a municipality may restrict the zoning district in which propane tanks are located, section 15(b)(2) of Act 61, 35 P.S. §1329.15(b)(2), bars a municipality from adopting laws that regulate the location of LPG containers. *Id.* at 691. This court concluded that the safety of a bulk fuel transfer station is a matter for the Commonwealth to regulate. *Id.*

In this case, the trial court determined that propane storage is permitted in the AR district and that Appellants attempted to regulate the storage tank's location by asserting a size restriction based on a determination that the tank would be dangerous.[6] The trial court also determined that Appellants introduced insufficient

_____

[6] The trial court noted that Deiter did not challenge the validity of the City Ordinance on the basis that it effectively excludes bulk plants within the City, and thus this issue was not preserved on appeal. Section 2 of Act 61 defines a "bulk plant" as "[a]n LPG storage facility, the primary purpose of which is the distribution of LPG which has: (1) a bulk storage capacity of more than 2,000 gallons; and (2) container-filling or tank-loading facilities on the premises." 35 P.S. §1329.2.

5

evidence that the storage tank presented a danger. Although Appellants presented evidence regarding a variety of disasters, the evidence had nothing to do with propane storage.[7] Moreover, although the fire chief testified as to the City's ability to respond to a potential incident, his testimony did not establish the likelihood of an incident. The trial court reversed the Board's decision, and this appeal followed.[8]

Initially, Appellants argue that contrary to the trial court's determination, City Ordinance §245-8G(11), which limits an LPG storage tank to 2,000 gallons, is not preempted by Act 61. Specifically, Appellants contend that Act 61 does not regulate the *capacity* of a tank. Thus, City Ordinance §245-8G(11) does not conflict in whole or in part with any provision of Act 61.

We initially observe that "[w]hen examining an express preemption clause, the task of statutory construction must in the first instance focus on the plain wording of the express preemption clause, which necessarily contains the best evidence of the legislature's pre-emptive intent." *JoJo Oil*, 77 A.3d at 690. Section 15 of Act 61 includes the following preemption clause:

**Preemption of municipal regulations.**

---

[7] Examples included the BP oil spill, the sinking of the Titanic, and the attack on the World Trade Center.

[8] Where, as here, the trial court does not take additional evidence, this court's review is limited to determining whether the Board committed an error of law or abused its discretion. *Residents Against Matrix v. Lower Makefield Township*, 845 A.2d 908, 910 (Pa. Cmwlth. 2004).

**(a)  Rights reserved by Commonwealth.--** The *Commonwealth specifically reserves the sole right and ability to regulate any and all matters related to the operation of the Liquefied Petroleum Gas Industry* in accordance with this act.

**(b)  Regulations not to conflict.-**

(1)   *No municipality or any other political subdivision shall adopt or enforce any ordinance or regulation which differs from or conflicts in whole or in part with the provisions of this act or with the regulations promulgated under this act with regard to permits, licensing standards, fees, construction, installation, maintenance, operation, inspection, location or placement of LPG containers or LPG facilities or any other matters related to this industry within this Commonwealth*, provided, further, that *a municipality may not prohibit placement of any LPG container in any existing yard setback* area except to establish an absolute setback of ten feet from a residential property line.

(2)  A municipality shall retain the right pursuant to local zoning ordinances to require any LPG facility to locate within approved residential, industrial, commercial or other zones and to require an LPG facility to obtain zoning permits, pay zoning fees and undergo inspections related to the zoning of the LPG facility.  Any building at an LPG facility shall comply with the municipal standards applied to primary structures.

(3)   *Except as provided in this subsection, a municipality may not prohibit or otherwise regulate the use or storage of LPG*, including the location or replacement of storage tanks for LPG.

**(c) Definitions.-**As used in this section, "differs" or "conflicts" shall include, but not be limited to, regulation of any area not addressed in this statute.

35 P.S. §1329.15 (emphases added).

Further, the regulations specifically provide that although a municipality may determine the district in which an LPG facility may located, 34 Pa. Code §13.54(3), a "*municipality may not prohibit placement of any LPG container* in any existing yard setback area except to establish an absolute setback of 10 feet." 34 Pa. Code §13.54(2) (emphasis added).

Appellants contend that in *JoJo Oil,* this court acknowledged that Act 61 "specifically recognizes a municipality's right to perform its traditional zoning function to restrict the zone in which [a] bulk fuel transfer station may be located." 77 A.3d at 691. Appellants claim that the City may also regulate tank capacity because Act 61 does not do so.

We agree with the trial court and Deiter that contrary to the prohibition set forth in Act 61, the City is attempting to regulate the construction, installation, and placement of the LPG tank. Specifically, although the City can zone where LPG may be stored, it cannot regulate other matters, including the size of the tank installed to hold the LPG.

> As stated in *JoJo Oil*, Act 61
>
> bars a municipality from adopting or enforcing any law which regulates the location of LPG containers, except a municipality shall retain the right to determine which zoning district would be most appropriate for such use. *Undoubtedly, the Commonwealth specifically reserved to itself the sole right to regulate **all matters** related to the operation of the LPG industry, including the location of LPG facilities.*

77 A.3d at 690 (emphases added).

8

Thus, although Act 61 authorizes a municipality to regulate the location of an LPG container, Act 61 authorizes the Commonwealth to regulate all other matters related to the LPG industry, including container capacity. Act 61 preempts City Ordinance §245-8G(11), and the City cannot prohibit Deiter from installing the proposed tank on the Property.

Appellants also rely on *Northeastern Gas Company, Inc. v. Foster Township Zoning Hearing Board*, 613 A.2d 606 (Pa. Cmwlth. 1992), a case which interpreted the language in the Act of December 27, 1951, P.L. 1793, *as amended*, 35 P.S. §§1321-1339 (Act 51), the predecessor to Act 61. Therein, this court observed that Act 51 only prohibited local regulation that was "in conflict" with Act 51. *Northeastern*, 613 A.2d at 608.

Appellants' reliance on *Northeastern* is misplaced because it was decided under Act 51, not Act 61. Act 51 only prohibited municipal regulations that conflicted with Act 51. Act 61 states that the Commonwealth shall regulate "all matters"[9] and forbids municipalities from regulating the "storage of LPG."[10] Act 51 did not contain this express language.

Next, Appellants argue that the proposed storage tank is dangerous and that the City is permitted to enact and enforce provisions to protect public safety. Appellants contend that the 2,000-gallon limit, which was adopted from the

---

[9] 35 P.S. §1329.15(a).

[10] 35 P.S. §1329.15(b)(3).

International Fire Code, protects citizens in heavily populated areas. Such a limitation is necessary so that emergency responders can adequately respond to a disaster. Appellants introduced evidence of the potential for a fire, a BLEVE, and terrorism. Further, Appellants assert that a leak would impact a significant area and that the City would be incapable of evacuating the area and protecting the public.

Appellants, however, did not introduce any evidence that a potential incident was likely to occur. As noted by the trial court, although Appellants identified many disasters, none of those disasters involved the storage of propane. The BLEVE occurred in Canada in 2008. No evidence was presented of any incidents involving a 30,000-gallon tank in the United States. In accordance with *JoJo Oil,* a municipality is not permitted "to restrict location based on its determination that such a facility is inherently dangerous." 77 A.3d at 691. Although Appellants argue that the storage tank is a safety issue, the legislature, through the enactment of Act 61, has given the Commonwealth the authority to regulate all matters concerning the storage of LPG.

Accordingly, we affirm.

_____
ROCHELLE S. FRIEDMAN, Senior Judge

10

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Deiter Family, L.P.               :
                               : No. 202 C.D. 2015
              v.           :
                               :

City of Easton Building Code     :
Board of Appeals and City of     :
Easton and W.B. Moore, Inc.     :
                               :
Appeal of:  City of Easton and City :
of Easton Building Code Board of :
Appeals                           :

## O R D E R

AND NOW, this 9th day of November, 2015, we hereby affirm the January 27, 2015, order of the Court of Common Pleas of Northampton County.

_____
ROCHELLE S. FRIEDMAN, Senior Judge