**CELLCO PARTNERSHIP d/b/a Verizon Wireless, Appellant**

v.

**NORTH ANNVILLE TOWNSHIP ZONING HEARING BOARD, Adaline M. Atkins, Gary L. Strock and Susan E. Strock.**

Commonwealth Court of Pennsylvania.

Argued April 9, 2007.
Decided Dec. 17, 2007.
Reargument Denied Feb. 7, 2008.

Michael D. Reed and Paula J. Leicht, Harrisburg, for appellant.

Keith L. Kilgore, Lebanon, for appellee, North Annville Township Zoning Hearing Board.

Susan J. Smith, Camp Hill, for appellee, Adaline M. Atkins.

David J. Tshudy, Lebanon, for appellees, Gary L. Strock and Susan E. Strock.

BEFORE: LEADBETTER, President Judge, and LEAVITT, Judge (P), and FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.[1]

Cellco Partnership d/b/a Verizon Wireless appeals from the order of the Court of Common Pleas of Lebanon County (trial court), which affirmed the decision of the North Annville Township Zoning Hearing Zoning Board (Zoning Board) to deny Verizon's request to locate a telecommunications tower in the Rural–Residential (R–1) District. The Zoning Board concluded that a cellphone tower was not compatible with a district intended for low-density residential development and farming. On the other hand, the Zoning Board held that Verizon could build a cellphone tower in the General Commercial District. Because the Zoning Ordinance permitted the erection of cellphone towers somewhere in the Township, albeit not where desired by Verizon, the Zoning Board rejected Verizon's claim that the ordinance was uncon-stitutionally exclusionary. Finding no error in the trial court's order, we affirm.

Verizon proposes to build a monopole cellphone tower, 195 feet tall, and place it in a 10,000 square-foot, fenced in area that will also house an equipment shelter. Verizon has leased the land for this purpose from Martin and Barbara Haubrich, whose 16.5 acre property is located in the Township's R–1 District. Verizon filed an application with the Zoning Board for a permit to construct the cellphone tower on the Haubrich property, asserting that it needs a tower there to close a gap in coverage.

The Township's Zoning Ordinance[2] does not list a cellphone tower as one of the uses expressly permitted in the R–1 District, but Verizon's application advanced three alternate theories to support the grant of a permit. First, Verizon believed that under the "savings provision" of the Zoning Ordinance, the Zoning Board could find a cellphone tower to be compatible with the uses expressly authorized in the R–1 District, such as a municipal tower, and grant the permit as a permitted use. If the Zoning Board did not so find, Verizon's second theory was that it was entitled to a variance for its cellphone tower because of the hardship it would otherwise suffer. Verizon's third theory was that the zoning ordinance was unconstitutionally exclusionary with respect to cellphone towers, thereby entitling it to a permit.

The Zoning Board convened a hearing, at which Verizon began its case with a history of its investigation into an appropriate site for a tower. It considered a site where the Township had granted a variance to Nextel for a cellphone tower that was never built, as well as existing tall structures in the Township on which cellphone antennae could be placed. Verizon

---

1. This opinion was assigned to the authoring judge on June 12, 2007.

2. NORTH ANNVILLE TOWNSHIP ZONING ORDINANCE OF 1973 (ZONING ORDINANCE).

rejected all alternatives. The Nextel site was located too far east and north to provide effective coverage, and there were no suitable tall structures in appropriate locations. Verizon explained that the Haubrich property afforded an ideal location, with wooded areas that would partly conceal the tower. Verizon also presented testimony from Timothy Staub, a community planner, who opined that the Zoning Board could consider Verizon's proposed tower to be similar to a municipal or principal utility structure, each of which is permitted in the R–1 District, according to Staub.

In response, the Township contended that Verizon's cellphone tower did not belong in the R–1 District because the tower was a commercial activity that belonged in the Commercial District. Several neighbors (Objectors) whose homes were located near the proposed tower intervened to object to Verizon's application. Objectors' expert opined that Verizon could not substantiate its claimed gap in coverage, noting, *inter alia*, that Verizon used a desired signal strength ten times greater than it had used in other applications to erect a cellphone tower.[3] This expert also explained how Verizon could achieve the coverage it wants by using co-located, or multiple, facilities of lesser height. Objectors' real estate expert opined that Verizon's cellphone tower would adversely affect the value of Objectors' properties.

The Zoning Board denied Verizon's request for a variance, holding that the company had failed to demonstrate that it needed a cellphone tower at the proposed height and only at the proposed location. Verizon appealed to the trial court, which remanded for a finding on the other theories pursued by Verizon, *i.e.*, whether a cellphone tower was compatible with uses permitted in the R–1 District and whether the Zoning Ordinance was exclusionary.

On remand, following oral argument and without taking additional evidence, the Zoning Board found that the cellphone tower was not compatible with the uses established by the Zoning Ordinance as permitted in the R–1 District.[4] However, the Zoning Board did find a cellphone tower to be compatible with the uses intended for the General Commercial District.[5] The Zoning Board also rejected

---

3. The higher the signal strength, the shorter the distance that the service will travel, thereby justifying the need for a taller tower.

4. The Zoning Ordinance establishes permitted uses in the R–1 District as follows:
  A. Agriculture, horticulture, non-intensive animal husbandry, nurseries and greenhouses—provided they do not involve retail sales, further provided; the storage of manure or animal storage structures shall not be located closer than two hundred (200) feet to any lot lie or road right-of-way.
  B. Public parks and playgrounds.
  C. Churches and cemeteries.
  D. Publicly owned nursery, kindergarten, elementary, middle and high schools.
  E. Single-family detached dwelling.
  F. *Public structures owned or operated by the Municipality or a Municipal Authority organized by the Municipality.*

  G. Hospitals and nursing homes.
  H. Forestry provided that:
    * * *
  I. Customary accessory uses and structures incidental to any of the above permitted uses provided for in Article V.
  J. Home occupations and no impact home-based businesses as regulated in Article V.
ZONING ORDINANCE, § 402.1 (emphasis added); Reproduced Record at 17a–18a (R.R. ——).

5. The Zoning Ordinance establishes permitted uses in the Commercial District as follows:

  A. Stores for the retailing of all consumer goods not otherwise prohibited by law.
  B. Multiple commercial use complexes and shopping centers provided that the following conditions are met.
    * * *

Verizon's argument that the proposed cellphone tower was similar to a "municipal" structure of some kind, which is defined as a structure as one "owned" by the municipality. It also held that a cellphone tower is wholly dissimilar to a "principal utility structure," such as an electrical generating plant. The Zoning Board concluded that the Zoning Ordinance was not exclusionary because Verizon could construct a tower in the Commercial District. Incorporating by reference its earlier decision, the Zoning Board again denied the variance.

Verizon appealed to the trial court,[6] where it contended that the Zoning Board erred as a matter of law in refusing to allow the tower in the R–1 District as a structure similar to those permitted by the Zoning Ordinance and, alternatively, in concluding that the ordinance is not exclusionary. The trial court affirmed the Zoning Board's interpretation of the Zoning Ordinance, and it agreed with the Zoning Board that because the cellphone tower was permitted in the Commercial District, the ordinance was not exclusionary. Based on these conclusions, the trial court affirmed the Zoning Board.

Verizon has appealed to this Court, seeking a reversal of the trial court on two grounds.[7] First, Verizon contends that the Township's Zoning Ordinance is *de jure* exclusionary with respect to cellphone towers, arguing that a cellphone tower is nothing like the uses intended for the Commercial District and, therefore, does not belong in that district. Stated otherwise, Verizon argues that the Zoning Board erred in its reading of the Zoning Ordinance. Second, Verizon contends that a cellphone tower is similar to a principal

---

C. Personal service shops including barber shops, beauty parlors, tailors, shoe repair, dry cleaning, laundromats, etc.

D. Medical and dental clinics and laboratories, pharmacies, and veterinarians.

E. Banks, savings and loan associations, finance agencies, and other offices providing business or professional services.

F. Forestry and forestry reserves.

G. Messenger, dispatch, express, and courier services.

H. Convenience stores—like Sheetz, Turkey Hill, etc.

I. Mortuary and undertaking establishments.

J. Indoor amusement enterprises such as arenas, bowling alleys, dance halls, and other recreation or entertainment establishments.

K. Churches and similar places of worship.

L. Restaurant facilities of all types, including drive-in, drive through or fast food, tea rooms, cafes, and other places serving food or beverages, including private membership, or social clubs and beverage distribution centers.

M. Printing and publishing firms.

N. Shops for contractors, plumbers, heating, painting, and upholstering specialties.

O. Hotels, motels, and Zoning Boarding houses.

P. Day care centers.

Q. Agricultural oriented commercial businesses.

R. *All other uses which in the opinion of the Zoning Administrator are similar to the above uses and in harmony with the intent of the regulations for this district. If a proposed use is not sufficiently similar to enable the Zoning Administrator to make a ruling, the Zoning Hearing Zoning Board may make a determination as authorized in Section 304.5 of this Ordinance.*

ZONING ORDINANCE, § 404.1 (emphasis added); R.R. 24a–26a. Industrial and manufacturing activities are assigned to the Manufacturing District. ZONING ORDINANCE, § 405.1.

6. Verizon did not appeal the denial of the variance to the trial court or to this Court.

7. Where the trial court has taken no additional evidence, our scope of review is limited to determining whether the Board committed an error of law or an abuse of discretion. *Polay v. Board of Supervisors of West Vincent Township*, 752 A.2d 434, 436 n. 2 (Pa.Cmwlth. 2000).

utility structure and to a municipal structure and, therefore, is permitted in the R–1 District. Again, Verizon asserts that the Zoning Board did not correctly interpret the Zoning Ordinance.

Essentially, both of Verizon's issues turn on the question of whether the Zoning Board has correctly interpreted the Zoning Ordinance. Accordingly, we begin with an examination of the Zoning Ordinance, the meaning of which disposes of both of Verizon's issues.

■ It is true, as conceded by the Township, that the words "cellphone towers," or their equivalent, do not appear in the Zoning Ordinance. It is impossible for a legislative body to anticipate every conceivable use of land and, therefore, the Zoning Ordinance includes a provision that authorizes the Zoning Board to determine whether to permit a use not specifically identified in the Zoning Ordinance. Known as the "savings provision," Section 304.5 states as follows:

> When a specific use is *neither permitted nor prohibited in the schedule of district regulations*, the [Zoning Board] shall make a determination, as an Administrative Review, as to the similarity or compatibility of the use in question to the permitted uses in the district, *basing the decision on the overall intent stipulated for the district.*

ZONING ORDINANCE, § 304.5; R.R. 27a (emphasis added). Verizon construes Section 304.5 to allow a cellphone tower in the R–1 District, arguing that its tower is similar to a "principal utility structure" and to a "municipal structure." We consider its similarity arguments *seriatim.*

We consider, first, what the Zoning Ordinance meant with respect to "principal utility structures," the siting of which is beyond a municipality's power to control. The utility exemption from zoning was created by the General Assembly in Section 619 of the MPC, which states as follows:

> This *article shall not apply to any existing or proposed building or extension thereof, used or to be used by a public utility corporation,* if, upon petition of the corporation, the Pennsylvania Public Utility Commission shall, after a public hearing, decide that the *present or proposed situation* of the building in question *is reasonably necessary for the convenience or welfare of the public.* It shall be the responsibility of the Pennsylvania Public Utility Commission to ensure that both the corporation and the municipality in which the building or proposed building is located have notice of the hearing and are granted an opportunity to appear, present witnesses, cross-examine witnesses presented by other parties and otherwise exercise the rights of a party to the proceedings.

53 P.S. § 10619 (emphasis added). Thus, a township may have input into the placement of a utility, such as an electrical plant and the lines therefrom, but only by appearing at the hearing before the Public Utility Commission, which has exclusive authority to decide where the utility structures will be placed.

The utility exemption is addressed in Section 519 of the Zoning Ordinance.[8] It states as follows:

---

8. A provider of cellphone service, such as Verizon, is not a "public utility" regulated under the Public Utility Code, 66 Pa.C.S. §§ 101–3316. Section 102(iv) of the Public Utility Code, states that the term "public utility" does not include "[a]ny person or corporation, not otherwise a public utility, who or which furnishes mobile domestic cellular radio telecommunications service." 66 Pa.C.S. § 102(iv). *See also, Crown Communications v. Zoning Hearing Board of Glenfield*, 550 Pa. 266, 275, 705 A.2d 427, 432 (1997) (provider of mobile cellular service not a "public utility" under the Public Utility Code).

PUBLIC UTILITY EXEMPTIONS. For the purposes of this Ordinance, *public utilities exemptions to district requirements shall extend only to accessory support and maintenance structures* and buildings not requiring human occupancy. Such uses and structures including fences shall be located no closer than ten (10) feet to any lot line or road right-of-way line. *Principal utility structures* (e.g. sewage treatment plants, electrical power plants, etc.) *shall be permitted in any district but shall comply in all respects with the requirements for a principal use of the district in which it will be located.* In either case, said Utility Corporation shall secure a Building and Zoning Permit from the Zoning Officer prior to the start of construction. Said permit application shall include any and all approvals required by other agencies, etc., for the use specified.

ZONING ORDINANCE, § 519 (emphasis added); R.R. 62a.[9]

Section 519 describes "principal utility structures" as "permitted" anywhere, which reflects, correctly, the mandate of Section 619 of the MPC. It was the choice of verb "permitted" in Section 519 that prompted Verizon to devise its argument that its cellphone tower is similar to "principal utility structure." However, Section 519 states a fact; it does not convey permission that is beyond North Annville's power to give. Further, Section 519 is not a "schedule of district regulations," *i.e.*, the provision to which Section 304.5 refers. ZONING ORDINANCE, § 304.5; R.R. 27a. An example is that schedule in Section 402.1, which contains a list of ten different uses permitted in the R–1 District. Section 519

is not such a "schedule" of permitted uses. It simply repeats what Section 619 of the MPC established: utilities are exempt from the Zoning Ordinance. North Annville did not "permit" utility structures anywhere in the Township, the General Assembly did this. In sum, Section 519 is irrelevant to Verizon's "similarity" argument.

Verizon's similarity argument with respect to municipal structures is equally non-compelling. The Zoning Board rejected Verizon's argument that a cellphone tower was similar to a municipal structure, noting that a municipal building allowed in the R–1 District is one "*owned or operated by* the municipality or a municipal authority." ZONING ORDINANCE, § 402.1(F) (emphasis added); R.R. 30a.[10] By contrast, Verizon's proposed tower is owned and operated by a for-profit enterprise. The Zoning Board also rejected Verizon's argument because it would lead to absurd results. It would allow a commercial office building to be built in the R–1 District on the theory it was "similar to" a municipal office building. Zoning Board Opinion, 1/23/06 at 5. The Zoning Board concluded that "in form and function, the proposed 195 foot tower is dissimilar" to a permitted municipal structure. *Id.* at 6.

Verizon contends that the Zoning Board and the trial court erred in rejecting its contention that its cellphone tower is similar to a municipal structure, relying on *Polay v. Zoning Board of Supervisors of West Vincent Township*, 752 A.2d 434 (Pa. Cmwlth.2000). In that case, the Polays sought to place a spring water collection and bottling business in a residential dis-

9. North Annville appears to assert the right to impose its setback and construction requirements for exempted utility structures. Whether North Annville can actually assert such authority given Section 519 of the MCP is not a question before the Court.

10. In light of this emphasis on ownership, it is not clear what is "similar to" a "public structure" owned by the Township, except a County, State or Federal building.

trict. The zoning board held that a spring water business belonged in the light industrial district where structures similar to a "public utility operating facility" could be built. The Polays argued to this Court that their spring water business did not belong in the light industrial district because it was not a utility. In rejecting the Polays' argument, this Court explained that for a use to be "similar to" that of a "public utility operating facility," the putative user did not need to be a utility. *Id.* at 436. Verizon claims that the Zoning Board and trial court followed the statutory construction argument this Court rejected in *Polay*.

*Polay* established that the focus in a "similar to" inquiry should be upon the use, rather than the identity of the user.[11] This does not mean, however, that "use" refers only to a type of structure and not to an activity. What takes place at a utility's sewage treatment plant or at a municipal fire station are activities that serve the public interest. As explained by the trial court, the "element of public benefit" is missing here. Trial Court Opinion, 8/11/06 at 8. Verizon's cellphone tower will advance Verizon's ability to compete in a marketplace, but these are commercial interests. There is a benefit conferred on the public by a cellphone tower because people desire cellphone coverage. However, there is an important difference between public and commercial benefits. In the case of a municipal structure or even a utility structure, a governmental body, not a private entity, makes the finding that there is a public benefit to be advanced by the structure. Here, no public body has ever made a finding that Verizon's proposed cellphone tower in the R–1 District

is even a good idea, let alone serves the public welfare.

However, even if we were to accept the argument that a cellphone tower is similar to a "municipal" building, or that the Section 519 utility exemption provision has any relevance, that does not carry the day for Verizon. Section 304.5 of the Zoning Ordinance directs that in finding whether a use is "similar to" a permitted use, the Zoning Board must base its "decision on the overall intent stipulated for the district." ZONING ORDINANCE, § 304.5. This takes us to Section 402 of the Zoning Ordinance, which explains the goals for the R–1 District. It states as follows:

> The regulations of the Rural–Residential District are designed to accommodate and encourage low density development, primarily residential in nature, *consistent with the characteristics of the prevailing open environment* of the Township. Development is restricted to low density, single family *residential development and related compatible uses* designed to serve the residential community.

ZONING ORDINANCE, § 402 (emphasis added; R.R. 30a).

The Zoning Board concluded that Verizon's proposed cellphone tower was not compatible with the overall intent for the R–1 District. The Zoning Board found that Verizon's cellphone tower would dominate the ridge line and be visible from over 50 percent of the most popular residential areas in the Township. Although the Haubrichs would not see the cellphone tower from their home, other Township residents would see an eight-foot high

---

11. However, *Polay* has limited application with respect to the public structure portion of Verizon's argument. This is because unlike the ordinance at issue in *Polay*, the Zoning Ordinance defines a "public structure" in terms of ownership and operation. As noted, this may mean that to be similar to a "public structure," ownership is a factor in the "similar to" analysis.

437

chain link fence with barbed wire on the top as well as the monopole. The Zoning Board also found that the tower was not needed to provide needed cellphone coverage to residents in the Township. Indeed, Verizon offers no cogent explanation as how its cellphone tower is consistent with the overall development intent for the R–1 District, *i.e.*, low-density development.

■ Deference is owed to a zoning board's understanding of its own ordinance. *Broussard v. Zoning Board of Adjustment of the City of Pittsburgh*, 589 Pa. 71, 81, 907 A.2d 494, 500 (2006) (citation omitted). This principle is particularly apt in this case where the application of Section 304.5 of the Zoning Ordinance, requires a determination that is one of mixed fact and law. The Zoning Board has to decide, first, what was intended generally for the R–1 District; second, whether a proposed use is compatible with that overall intent; and, third, whether a proposed use is similar to the uses expressly permitted in the R–1 District.

We conclude that the trial court correctly upheld the Zoning Board's interpretation of Section 304.5. The job of the reviewing court is to give meaning and effect to a legislative construct and avoid absurd results. To allow the erection of a cellphone tower in any district, would mean that Verizon could buy a quarter acre lot in a subdivision and thereon erect a cellphone tower under authority of Sections 519 and 304.5 of the Zoning Ordinance, and this is absurd. We conclude that the Zoning Ordinance does not authorize the placement of Verizon's proposed cellphone tower in the R–1 District.

■ We turn, then to Verizon's argument that the trial court erred in affirming the Zoning Board's decision that a cellphone tower could be placed in the Commercial District. Verizon argues that one cannot find a cellphone tower to be similar to any of the uses expressly permitted in the Commercial District or compatible with the intent for that district. It makes this argument in order to advance its claim that the Zoning Ordinance is exclusionary.

Section 404.1 of the Zoning Ordinance contains a laundry list of commercial uses permitted in the Commercial District. They range from retail stores and forestry reserves to dental clinics. In addition, Section 404.1 authorizes "all other" similar commercial uses. Section 404.1(R) states that the Zoning Ordinance permits

[a]ll other uses which in the opinion of the Zoning Administrator are uses similar to the above uses and in harmony with the intent of the regulations for this district.

ZONING ORDINANCE. § 404.1(R); R.R. 39a. Verizon argues that a cellphone tower is simply not "similar to" the listed commercial uses and not "in harmony with the intent" of the regulations for the Commercial District.

In support, Verizon points to the intent proviso of Section 404, which states as follows:

INTENT. The regulations of this District are designed to accommodate commercial activity within the Township and areas served by public water and sewer. *Since these enterprises are for the most part dependent on traffic generated by a major thoroughfare*, these uses are grouped together to facilitate shopping via automobile. The requirements contained in this article are designed to promote safe and expedient conveyance of the resulting high traffic volumes, including use of internal service roads, limited driveway accesses and other designs which may prevent highway congestion commonly associated with commercial development.

ZONING ORDINANCE, § 404 (emphasis added); R.R. 37a. Verizon argues that since its proposed cellphone tower does not need water or sewage service and will not impact traffic flow in the Township, the Zoning Board erred in finding a cellphone tower to be a permitted commercial use under Section 404.1(R) of the Zoning Ordinance. We disagree.

First, Verizon's argument ignores an essential, qualifying phrase in Section 404, *i.e.*, "for the most part." The expressly permitted uses listed in Section 404.1 are *"for the most part* dependent on traffic generated by a major thoroughfare," but they do not all share this characteristic. Most obviously, the permitted commercial uses of "forestry and forestry reserves" are not dependent on major thoroughfares for their success. Indeed, "traffic" may be viewed as an impediment to a forestry reserve, and a "thoroughfare" is irrelevant, at least until the trees are harvested.

Second, Verizon's argument fails to take into account the wide swath cut by the list of permitted commercial uses. It covers: beauty parlors, convenience stores, mortuaries, churches, day care centers, bowling alleys, banks, restaurants, upholsterers, boarding houses, laundromats and, as noted, forestry reserves. A cellphone tower is at least as "similar to" any of these expressly permitted uses as one of them is to another. A cellphone tower may not be similar to a beauty parlor, but, then, neither is a bowling alley. The only common ingredient to the list of expressly permitted commercial uses is that they involve commerce, as does, most assuredly, a cellphone tower.[12]

Third, although it is true that a cellphone tower does not require water and sewage service, this is not the *sine qua non* of commercial activity. The first sentence of Section 404 simply explains that the Zoning Ordinance accommodates commercial activity by placing the Commercial District in Township areas served by sewer and water lines. The Zoning Ordinance does not define commercial uses in a way that excludes cellphone towers, and it does not limit commercial activities to those needing water and sewage service. Forestry reserves also do not need sewer and water service.

Again, consistent with the deference we owe to the Zoning Board's interpretation of its Zoning Ordinance, we affirm the Zoning Board and the trial court. We agree with the Zoning Board conclusion that a cellphone tower is permitted in the Commercial District by reason of the "catchall" provision in Section 404.1(R).

Because cellphone towers are permitted in the Township by virtue of Section 404.1(R) of the Zoning Ordinance, Verizon's assertion that the Zoning Ordinance is *de jure* exclusionary necessarily fails. A zoning ordinance enjoys "a presumption of constitutionality and validity, and the party challenging [the ordinance] bears the 'heavy burden' of proving otherwise." *Macioce v. Zoning Hearing Board of the Borough of Baldwin,* 850 A.2d 882, 887 (Pa.Cmwlth.2004). The challenger does not overcome that presumption unless it can demonstrate that "the ordinance *totally excludes* an otherwise legitimate use." *Id.* (citation omitted) (emphasis added). The Zoning Ordinance does not allow Verizon to place its cellphone tower exactly where it wishes, but that is not the test of an exclusionary ordinance. The test is whether the Zoning Ordinance "totally excludes" cellphone towers, and it does not.

---

12. A "commercial" activity is one "relating to *commerce;"* "having to do with stores, office buildings, etc.;" "made, done or operating (a) primarily for profit, (b) designed to have wide popular appeal." WEBSTER's IV NEW COLLEGE DICTIONARY, 293 (2001) (emphasis added).

The Zoning Board's decision is firmly grounded in the language of the Zoning Ordinance. The trial court did not err in affirming the Zoning Board. Thus, we affirm the trial court.

## *ORDER*

AND NOW, this 17th day of December, 2007, the order of the Court of Common Pleas of Lebanon County in the above captioned matter is hereby AFFIRMED.

DISSENTING OPINION BY President Judge LEADBETTER.

Respectfully, I dissent. Because I think that the ZHB applied and common pleas sustained an erroneous, overly restrictive interpretation of the ordinance to deny Verizon's request to locate a telecommunications (cell) tower in the rural zoning district, I would reverse.

The proper interpretation of a zoning ordinance is an issue of law over which our review is plenary. *A. & L. Inv. v. Zoning Hearing Bd. of McKeesport,* 829 A.2d 775 (Pa.Cmwlth.2003). In general, as the majority states, a ZHB's interpretation of its ordinance is entitled to great weight and deference. *City of Hope v. Sadsbury Twp. Zoning Hearing Bd.,* 890 A.2d 1137, 1143 (Pa.Cmwlth.2006). This principle is especially applicable where the ZHB has afforded the applicant a permissive rather than restrictive interpretation. *See Smith v. Zoning Hearing Bd. of Huntingdon Borough,* 734 A.2d 55 (Pa.Cmwlth.1999). However, a restrictive interpretation is limited by the general principle that a zoning ordinance, which by nature conflicts with the broad common law rights of a landowner, should be construed in a manner that affords a landowner the benefit of the broadest scope of use that a reasonable

interpretation may afford. *See* Municipalities Planning Code, Act of July 31, 1968, P.L. 805, Section 603.1, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10603.1. *E.g., Appeal of Rolling Green Golf Club,* 374 Pa. 450, 97 A.2d 523 (1953); *Burgoon v. Zoning Hearing Bd. of Charlestown Twp.,* 2 Pa.Cmwlth. 238, 277 A.2d 837, 841 (1971) (recognizing that a term describing a permitted use, such as "educational," carries both a permitted and a restrictive component within the interpretation of its meaning and stating that "the permissive nature of the phrase must be taken in its 'broadest sense.' ").

In the present case, the ordinance contains a general provision, at Section 304.5, that opens the door, in any zoning district, to ZHB approval of a use similar or compatible to the uses expressly permitted. Section 304.5 of the ordinance, provides:

When a specific use is neither permitted nor prohibited in the schedule of district regulations, the Zoning Hearing Board shall make a determination, as an Administrative Review, as to the similarity or compatibility of the use in question to the permitted uses in the district, basing the decision on the overall intent stipulated for the district.

The majority points to the language in this "savings provision" calling for the similarity or compatibility of the use to be determined based on "the overall intent stipulated for the district." Such reliance ignores well-established case law holding that ordinance provisions calling for implementation of, or consistency with, statements of general intent cannot serve to undermine provisions in an ordinance that more specifically permit a use. *See Phillips v. Zoning Hearing Bd. of Montour Twp.,* 776 A.2d 341, 343 (Pa.Cmwlth.2001). Consequently, while Section 304.5 directs that similarity or compatibility determinations should be based on the overall intent

stipulated for the district, this analysis should not override a more specific comparison between what the ordinance permits and the proposed use. In other words, if a radio or electric tower is permitted in the R–1 District, then a similar structure, such as a cell tower, cannot be held under the guise of incompatibility to be prohibited.

Listed among the "permitted uses" in the R–1 District appears: "Public structures owned or operated by the Municipality or a Municipal Authority organized by the Municipality." Zoning Ordinance, § 402.1F. I believe that this provision opens the door to the erection of an emergency radio dispatch tower in the R–1 District. However, in interpreting whether the proposed cell tower qualifies as similar to that which is explicitly permitted as a "public structure," the majority agrees with both common pleas and the ZHB that Verizon's cell tower does not qualify as a permitted structure because Verizon is not a municipality or a municipal authority. This analysis misplaces the focus on the nature of the entity using the structure rather than on the nature of the structure itself and the uses to which a tall tower may be devoted, such as the transmission of power or sound frequency. The focus on the nature of the entity using the structure results in an overly restrictive interpretation.

The only proper focus is on the similarity between the cell tower and the type of structures that may be erected to facilitate a public use.[1] *See Polay v. Bd. of Supervisors of West Vincent Twp.*, 752 A.2d 434, 436 (Pa.Cmwlth.2000). Insofar as a municipality or municipal authority may erect

a radio/emergency dispatch tower in the R–1 District, Verizon seeks to erect a structure for a use sufficiently similar to qualify under ordinance Section 304.5. *See, e.g. Pearson v. Zoning Hearing Bd. of Newlin Twp.*, 765 A.2d 1187, 1189–90 (Pa. Cmwlth.2001) (ruling that 150 foot cell tower and associated equipment is a "radio transmitter.").

In addition, Section 519 of the ordinance provides:

> For the purposes of this Ordinance, public utilities exemptions to district requirements shall extend only to accessory support and maintenance structures and buildings not requiring human occupancy. Such uses and structures including fences shall be located no closer than ten (10) feet to any lot line or road right-of-way line. Principal utility structures (e.g. sewage treatment plants, electrical power plants, etc.) shall be permitted in any district but shall comply in all respects with the requirements for a principal use of the district in which it will be located.

I cannot construe this provision as opening the door in every zoning district to only principal utility structures. Such a construction is illogical insofar as it would permit placing a power plant in any zoning district but not allow in the same district the accessory towers necessary for transmission of power from the generating plant. Rather, I view this provision as requiring that principal utility structures comply in all respects to the requirements for principal uses in the district in which they will be located, but the accessory and maintenance structures are exempt from

---

1. The majority opines that the "similar to" inquiry must encompass a determination that the tower's use serves the public. While I conclude that the only crucial determination is whether the activity on the site is similar to an activity permitted under the ordinance, I

nevertheless do not agree that the provision of cell phone service advances *only* private business interests. Cell phones provide an element of public benefit in the same manner as land line telephone service.

district requirements such as setbacks. Inasmuch as Section 519 provides in every zoning district for structures such as electrical generating facilities *and the associated transmission lines,* the question becomes whether the proposed cell tower is sufficiently similar or compatible to such transmission lines so as to fall within the permission afforded under Section 304.5 to locate such similar or compatible structures in the R–1 District. I believe it strains credulity to conclude that high power transmission lines and cell towers are dissimilar.

Indeed, an objecting neighbor based her case against the cell tower on its similarity to electric transmission towers. A real estate appraiser, Larry Foote, testifying on behalf of intervenor, Adaline Atkins, noted the similarity between towers that accommodate electrical lines and the proposed cell tower. Foote testified that in his efforts to assess the probable impact of the tower on real estate values and unable to find a residential property with a cell tower in close proximity similar to the instant circumstances, he "looked for another similar structure and located large steel electrical towers and found some of those by residential properties." Notes of Testimony, January 27, 2005 at 149. Foote then based his comparative value analysis on the properties near the electrical towers. While Mr. Foote's testimony certainly cannot determine our legal interpretation of the ordinance, a common sense interpretation compels my agreement with his assessment as to the similarity between electrical towers and cell towers.

In allowing via Section 304.5 uses similar to those explicitly permitted, and in then allowing utility structures in all districts, as well as municipal structures in the R–1 District, the ordinance implicitly permits cell towers in every district, including the R–1 District at issue here.

Accordingly, I would reverse.