IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pegasus Tower Co., Ltd., and Open : 
Range Communications, Inc. : 
                             : No.  192 C.D. 2017
                  v. : 
                             : Argued:  November 14, 2017
Upper Yoder Township Zoning : 
Hearing Board and Harry Pote and : 
Marjorie Pote, William and Carol : 
Ann Pruchnic, George and Rani Frem : 
and Samuel and Francine Glass : 
                             : 
Pegasus Tower Co., Ltd., and Open : 
Range Communications, Inc. : 
                             : 
                  v. : 
                             : 
Upper Yoder Township Zoning : 
Hearing Board : 
                             : 
Appeal of:  Harry and Marjorie : 
Pote, William and Carol Ann : 
Pruchnic, George and Rani Frem, : 
and Samuel and Francine Glass : 

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
                  HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE DAN PELLEGRINI, Senior Judge

***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                        FILED:  January 23, 2018

        In what may be considered to be a companion case to *Pote v. Pegasus Tower Co., Ltd.*, (Pa. Cmwlth., No. 1186 C.D. 2013, filed March 27, 2014)

(unreported), Harry and Marjorie Pote, William and Carol Ann Pruchnic, George and Rani Frem, and Samuel and Francine Glass (collectively, Objectors) appeal the January 20, 2017 order of the Court of Common Pleas of Cambria County (trial court) granting Pegasus Tower Co., Ltd. and Open Range Communications, Inc. (collectively, Pegasus) "site-specific" relief and the authority to construct a 195 foot cellular communications tower, with related antennas and equipment, at its originally proposed site in an S Conservancy District. In a prior opinion and order dated October 13, 2015, the trial court reversed the decision of the Zoning Hearing Board of Upper Yoder Township (ZHB), concluded that the Zoning Ordinance (Ordinance) was *de jure* exclusionary as to cellular towers and wireless communication facilities, and determined that Pegasus was entitled to build its tower "somewhere" in the municipality. We reverse.

**Background**

After landowners leased part of their real property to Pegasus for the right to construct a communications tower, Pegasus filed a conditional use application on April 8, 2011. In its application, Pegasus also contended that the Ordinance was *de jure* exclusionary. On June 8, 2011, the ZHB held a hearing on Pegasus' challenge to the substantive validity of the Ordinance and denied the challenge. However, in the conditional use proceedings, the Upper Yoder Township Board of Supervisors (Board) failed to hold a hearing to determine whether Pegasus was entitled to a conditional use under the generally applicable standards in the Ordinance regarding the proposed tower's impact to the health, safety, and welfare of the community.[1]

---

[1] Apparently, there is some confusion amongst the parties as to which entity, the ZHB or the Board, should have decided the merits of the conditional use application. As we noted in *Pote*, the

2

Pegasus appealed to the trial court, asserting that: (1) its conditional use application was deemed approved by operation of law because the Board did not hold a hearing within sixty days of the application, and (2) the ZHB failed to issue a written decision that contained the necessary findings of fact and conclusions of law. On July 17, 2012, the trial court, sitting *en banc*, concluded that the conditional use was deemed approved under the Municipalities Planning Code (MPC)[2] and ordered Upper Yoder Township (Township) to issue official notice that the application has been approved (Conditional Use Case). The *en banc* trial court also remanded the *de jure* exclusionary challenge to the ZHB to issue a written decision containing findings of fact and conclusions of law (Exclusionary Case). After the Township issued the notice of approval, Objectors appealed to the trial court in the Conditional Use Case.

Meanwhile, on August 22, 2012, the ZHB issued its remand decision and again denied Pegasus' claim that the Ordinance was invalid because it constituted *de jure* exclusionary zoning. Relying on the testimony of the Township's Zoning Officer and Engineer, the ZHB found as fact that:

> c). [A] wireless communication facility such as proposed by [Pegasus] could be provided in zoning districts in the Township by right, special exception, or by conditional use.
>
> *     *     *
>
> e).    [Pegasus] could have applied for its use in other districts within the Township, specifically three different commercial zoning districts and one manufacturing district. [Pegasus] did not apply for its use in any of those areas and/or districts.

---

Board believed that it lacked jurisdiction to decide the application because it did not possess the authority to grant a conditional use in an S Conservancy District. *Pote*, slip op. at 1, n.1.

[2] Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101-11202.

3

f).    [T]here actually existed other towers in the existing zones within the Township.  Specifically, there are TV antenna towers within a residential zone.

g). [The Zoning Officer/Engineer] provided alternate sites for the proposed use to [Pegasus].

(ZHB's Findings of Fact No. 12 (c), (e)-(g)).

In its conclusions of law, the ZHB held:

3.    The request to erect a 195 foot cell tower is clearly commercial in nature and as such is prohibited in the conservancy district.  The ordinance is not *de jure* exclusionary regarding this type of monopole cell tower.

*    *    *

8.    The zoning ordinance may permit communication towers and wireless communication facilities by special exception under sections 601, 602, 603, and 701 of the zoning ordinance, which address commercial and manufacturing districts.

9.    The 195 foot monopole cell tower may be permitted in at least three out of the four existing commercial and manufacturing districts if a variance were  granted regarding height. The Township Zoning Officer provided these alternatives to [Pegasus].  [Pegasus] never applied for a permit in any of these zones, nor ha[s] [Pegasus] applied for a height variance.

10.    The ordinance does incorporate terms such as towers and structures. There are several similar towers of varying use currently in existence in the Township.

*    *    *

14. . . .  The ordinance is not exclusionary as this use may be permitted in its commercial and manufacturing districts.

15.    Moreover, [Pegasus] [is] requesting to place the 195 foot monopole cell tower, which is commercial in nature, in

4

a conservancy district. The conservancy district is intended to preserve the scenic and ecological values of the Township's steep hillside, lands, waterways, environmentally sensitive forest land and soil types through the prohibition and restriction of commercial, industrial, and most residential development. This district is the most conservative district outlined in the ordinance. To place a 195 foot commercial tower in that district would not be proper under the ordinance and in fact, since this ordinance is not exclusionary regarding [Pegasus'] proposed use, would be improper.

(ZHB's Conclusions of Law Nos. 3, 8-10, 14-15.) As such, the ZHB concluded that the Ordinance was not *de jure* exclusionary and cited *Cellco Partnership v. North Annville Township Zoning Hearing Board*, 939 A.2d 430, 434 (Pa. Cmwlth. 2007), for support. Pegasus appealed.

In due course, the Conditional Use Case and the Exclusionary Case were both pending before the trial court, and the parties agreed to hold the Exclusionary Case in abeyance until the Conditional Use Case was decided.

In their appeal to the trial court in the Conditional Use Case, Objectors contended, among other things, that Pegasus is not entitled to a conditional use because the proposed site of the tower is located in an S Conservancy District and the applicable provisions of the Ordinance would only allow Pegasus to construct a communications tower by special exception in commercial or manufacturing districts. The trial court, however, found that the effect of the deemed approval precluded Objectors from raising this argument. *Pote*, slip op. at 1-5.

A panel of this Court disagreed on further appeal and we addressed Objectors' contention on the merits, concluding that a conditional use was not permitted in an S Conservancy District. In interpreting the pertinent provisions of the Ordinance, we noted that "section 301 of the Ordinance delineates the classification of districts as follows: C-1 District = C-1 General Business District; C-2 District = C-2

5

Planned Shopping District; C-3 District = C-3 Research-Office District; M-1 District = M-1 Manufacturing District; and S District = S Conservancy District." *Pote*, slip op. at 17 (citing Ordinance, §301).  We then looked at sections 107 (Conditional Use), 1505 (Criteria for Conditional Uses), and 901 ("S" Conservancy District) of the Ordinance, which read, in pertinent part, as follows:

> *Any land use which is not specifically permitted in a particular zoning district may be permitted in such district if approved by the governing body of the municipality.* Provision for conditional use is to be allowed or denied by the governing body of the municipality [and] must be made pursuant to public notice and hearing and recommendations by the municipal planning commission and pursuant to expressed standards and criteria set forth in this ordinance. In allowing a conditional use, the governing body may attach such reasonable conditions and safeguards, in addition to those expressed in this ordinance, as it may deem necessary to implement the purposes of this ordinance.

Ordinance, §107 (emphasis added).

> *Conditional uses shall be permitted in C1, C2, C3, and M1 Zoning Districts,* with the exception of specifically stated non-permitted uses*, as long as the governing body utilizes the following criteria in permitting such conditional uses.* A conditional use may be permitted as long as it does not negatively impact on the following:
>
> 1. Municipal infrastructure (water, sewer, streets, etc.)
>
> 2. Regional housing needs and effectiveness of the proposal to provide affordable housing (if the proposal is residential).
>
> 3. The physical suitability of the site for the intensity of its use.
>
> 4. The site's soils, slopes, woodlands, wetlands, floodplains, natural resources and natural features and any adverse environmental impact; and

6

5. The preservation of agricultural and other land uses which are essential to the public health and welfare.

Ordinance, §1505 (emphasis added).

> The "S" Conservancy District is intended to preserve the scenic and ecological values or the township's steep hillside lands, waterways, environmentally sensitive forest lands and soil types through the prohibition or restriction of commercial, industrial and most residential development. The Conservancy District allows for low density "single-family" residential development, and the continuation of existing farming operations.

Ordinance, §901(A).

In analyzing the operative language, this Court in *Pote* stated: "Under section 1505, conditional uses may be granted only in C1, C2, C3, and M1 zoning districts and not an S Conservancy district. Therefore, with there being no dispute that Pegasus' proposed use is located in an S Conservancy District, we conclude that the trial court erred in granting Pegasus a conditional use." *Pote*, slip op. at 20. Having determined that the Ordinance prohibited Pegasus from obtaining a special exception to construct a cellular communications tower in an S Conservancy District, this Court reversed the trial court.

Following our decision in *Pote*, Pegasus returned to the trial court, seeking a ruling as to whether the ZHB erred in denying its substantive validity challenge in the Exclusionary Case. After the parties conducted oral argument and submitted briefs, the trial court, by opinion and order dated October 13, 2015, concluded that the Ordinance was *de jure* exclusionary, differentiating our decision in *Cellco* as follows:

> [U]nlike in *Cellco*, where the North Annville Township Board determined that Verizon **could** build a cell phone tower in the General Commercial District based on the catchall provision in its Ordinance, in the case at bar the [ZHB] includes frequent contingent language ("may be

7

permitted," "if they are granted a variance," "special exception," etc.) . . . . This language regarding contingencies and its (the Ordinance) lack of objectivity is what Pegasus has seized on in its argument to distinguish this case from *Cellco*.

(Trial court op. at 8-9, emphasis in original; *see* ZHB's Conclusions of Law Nos. 8-9 14 (stating that the Ordinance "may permit" communication towers, communications towers "may be permitted, and "this use may be permitted.")).

Next, the trial court analyzed the four provisions of the Ordinance, sections 601, 602, 603, and 701, that the ZHB determined were broad enough to permit a wireless communication facility by special exception. In relevant part, section 601, governing C-1 General Business District, lists certain permitted uses and also:

> *Similar type commercial uses not specifically listed when authorized as a special exception by the Zoning Hearing Board* after receipt and review of recommendations of the Planning Commission. Special exceptions shall be based upon compatibility and similarity to other uses as listed herein and shall not be prejudicial to the health or public safety of the community.

Ordinance, §601 (emphasis added).

Likewise, section 602, pertaining to C-2 Planned Shopping District, allows as a use any "*[s]imilar type retail, service or commercial use not specifically listed herein when authorized by the Zoning Hearing Board* after receipt and review of recommendations from the Planning Commission." Ordinance, §602 (emphasis added). Further, a permitted use in a C-2 district includes "[a]ny use permitted in the C-1 District." *Id.*

With regard to C-3 Research-Office District, section 603 permits any "*[s]imilar type research-office use not specifically listed herein when authorized by special exception of the Zoning Hearing Board* after receipt and review of recommendations from the Planning Commission. Such authorized uses may include

8

limited light manufacturing provided all activities are conducted indoors." Ordinance, §603 (emphasis added).

Section 701, M-1 Manufacturing District, includes within a permitted use "*[a]ny other compatible type manufacturing use*," and any "[a]ccessory use or building customarily incidental to the above permitted uses." Ordinance, §701 (emphasis added). This section permits such uses:

> *Upon grant of a special exception by the Zoning Hearing Board* that all requirements herein are met:
>
> A manufacturing use is one which creates a minimum amount of nuisance outside the plant; is conducted entirely within enclosed buildings, does not use the open area around such buildings for storage of raw materials or manufactured products unless screened from public view or for any other purpose other than transporting goods between buildings; and which is not noxious or offensive by reason of the emission of smoke, dust, fumes, gas, odors, noises or vibrations beyond the confines of the building.

Ordinance, §701 (emphasis added).

> In interpreting these sections, the trial court commented:
>
> As one can see, none of these sections provide criteria for the grant of a special exception in each respective section such that a citizen would be put on notice as to how to receive such an exception. None of these sections establish criteria under which an applicant could meet any objective standards so long as they do not interfere with public welfare, safety, etc. The [ZHB] relies on the fact that an applicant may be able to build a wireless communication facility or cell phone tower by "special exception" in its Conclusions of Law. See Conclusions of Law, August 22, 2012, ¶8. However, no such guidance is available in those sections for such an exception.

(Trial court op. at 12.)

9

Finally, the trial court found that, assuming a cellular tower could be a permitted use by way of special exception in the commercial and manufacturing districts, Pegasus' proposed tower would fall outside the realm of the use because it would most likely need a variance from height restrictions:

> The [ZHB] relies on the fact that Pegasus "may be permitted [to build its tower] in at least three out of the four existing commercial and manufacturing districts if a variance were granted regarding height." See Conclusions of Law, August 22, 2012, ¶9. Section 601 has a height requirement of two (2) stories or thirty-five (35) feet. Section 602 has no height requirement nor does 603. Section 701 has a height requirement of three stories or forty (40) feet. While there is no evidentiary record to support this contention of the [ZHB] because Pegasus never did ask for a variance, we do not believe that this undercuts Pegasus' argument relative to a *de jure* exclusion. As discussed a variance is not a special exception, it is, by its very nature a request to break an ordinance. The Ordinance cannot provide for a use by variance and then the [ZHB] argue [sic] that the use is not excluded. In fact, the use has to be excluded in any given zone for a variance to be available.

(Trial court op. at 13.)

Accordingly, the trial court concluded that the Ordinance constituted *de jure* exclusionary zoning. After scheduling a hearing, the trial court entered an order and opinion on January 20, 2017, decreeing that, for relief, Pegasus can construct its cellular communications tower where it proposed in its application, in the S Conservancy District, so long as it obtained the necessary permits and approval.

**Discussion**

On appeal, Objectors contend that the trial court improperly substituted its judgment for that of the ZHB, which is owed deference in its interpretation of the Ordinance, and overlooked section 1005 of the Ordinance. Objectors assert that the

10

trial court erroneously construed language in the ZHB's decision as being contingent, when a fair reading of the decision reveals that the ZHB affirmatively stated that cellular towers are a permitted use in commercial and manufacturing districts if the applicant meets the objective requirements for granting a conditional use.

Initially, we observe that,

> Zoning ordinances that exclude uses fall into one of two categories — *de jure* or *de facto*. In a *de jure* exclusion case, the challenger alleges that an ordinance on its face totally excludes a use. In a *de facto* exclusion case, the challenger alleges that an ordinance appears to permit a use, but under such conditions that the use cannot in fact be accomplished.

*Township of Exeter v. Zoning Hearing Board of Exeter Township*, 962 A.2d 653, 659 (Pa. 2009) (citations omitted). The issue in this case is whether the Ordinance is *de jure* exclusionary.

Even if a zoning ordinance does not allow an entity to place its cell phone tower exactly where it wishes, this does not mean that the ordinance is *de jure* exclusionary. The test is whether the zoning ordinance "totally excludes" cell phone towers as a use, and it is the applicant's burden to prove so. *Cellco*, 939 A.2d at 438.

> Simply because an ordinance does not expressly permit a use does not mean that it prohibits that use. If localities were required to detail in their zoning ordinances every possible land use, they would have time to do little else. It is difficult enough for experts in the telecommunications industry to keep up with the changes in the industry, where technology has changed so rapidly in a few short years. Requiring local zoning officers to do the same — and to assure that these changes are enshrined in local ordinances — is asking for more than [the law] requires.

*APT Pittsburgh Limited Partnership v. Lower Yoder Township, Cambria County*, 111 F.Supp.2d 664, 670 (W.D. Pa. 2000).

11

To avoid being exclusionary, an ordinance need not allow a use absolutely, as a permitted use, but may allow for it conditionally, by way of special exception or application for a conditional use. *See Kaiserman vs. Springfield Township*, 348 A.2d 467, 469-72 (Pa. Cmwlth. 1975). As evidenced in our decision in *Pote*, sections 107 and 1505 of the Ordinance vest the Board with authority to grant a conditional use, that is, to allow a "land use" that is not specifically permitted in a particular zoning district, after considering the impact that the proposed use may have on the public health and welfare, including municipal infrastructure, the environment, and the topographic nature of the area. In addition, sections 601, 602, 701 provide further requirements that must be met to obtain a conditional use, such as "compatibility" and/or "similarity" to other uses that are expressly permitted. Contrary to the trial court's conclusion, these provisions contain objective criteria for granting a conditional use and provide sufficient guidance to applicants as to what must be achieved, or what will be considered, when they are seeking a conditional use.

A "catchall" provision in an ordinance can allow for a use not specifically identified in the ordinance based upon similarity or compatibility of the use in question to the permitted uses in the district. *Cellco*, 939 A.2d at 438. This Court has held that a cell phone tower is commercial in nature and is "similar to" most commercial uses; consequently, a zoning hearing board can reasonably conclude that a cell phone tower is permitted in commercial districts, or any other district that is commercial in nature. *See id.*[3] Ultimately, if a cell phone tower is permitted as a use under a "catchall"

---

[3] In *Cellco*, a communications provider argued that the zoning hearing board erred in finding a cell phone tower to be a permitted commercial use under an ordinance's catchall provision. In rejecting that argument, we said that it,

> fails to take into account the wide swath cut by the list of permitted commercial uses. It covers: beauty parlors, convenience stores,

12

provision, a *de jure* exclusionary claim necessarily fails, because the use is not totally excluded. *See id.*; *see also Omnipoint Communications Enterprises v. Zoning Hearing Board of Easttown Township*, 189 F. Supp. 2d 258, 265-67 (E.D. Pa. 2002), *aff'd* 331 F.3d 386, 396 (3d Cir. 2003); *Pennsylvania Cellular Telephone Corporation v. Zoning Hearing Board of Buck Township*, 127 F. Supp. 2d 635, 642-43 (M.D. Pa. 2001); *APT Pittsburgh Limited Partnership*, 111 F. Supp. 2d at 670-71 & 678-89.

Here, the catchall provisions of sections 601 and 602 of the Ordinance permit "[s]imilar type commercial uses" in the C-1 and C-2 districts, and *Cellco* mandates that the cellular tower proposed by Pegasus meets this general standard. *See Cellco*, 939 A.2d at 438. Section 701, pertaining to the M-1 district, also permits a special exception for manufacturing uses. Consistent with *Cellco*, Pegasus' cellular tower is sufficiently analogous to the manufacturing uses in the sense that the tower processes, transmits, and/or produces signals.

Moreover, section 1005 of the Ordinance states that "[i]n any commercial, manufacturing or multi-family residential zone, satellite television antennas may be located within the buildable area on the lot or buildings therein." Ordinance, §1005. In turn, section 202 of the Ordinance defines a "satellite television antenna" as "[a]n apparatus capable of receiving communications from a transmitter relay located in

_____

mortuaries, churches, day care centers, bowling alleys, banks, restaurants, upholsterers, boarding houses, laundromats and, as noted, forestry reserves. A cell phone tower is at least as 'similar to' any of these expressly permitted uses as one of them is to another. A cell phone tower may not be similar to a beauty parlor, but, then, neither is a bowling alley. The only common ingredient to the list of expressly permitted commercial uses is that they involve commerce, as does, most assuredly, a cell phone tower.

*Cellco*, 939 A.2d at 438.

13

geostationary orbit." Ordinance, §202.[4]  Although Pegasus' proposed tower would involve telephonic communications and not television transmissions, the two are remarkably comparable and substantially similar as a functional and operational matter. *See* Reproduced Record (R.R.) at 72a-79a, 86a-93a; ZHB's Conclusion of Law No. 10; *APT Pittsburgh*, 111 F. Supp. 2d at 670-71 & n.5; *see also Pearson v. Zoning Hearing Board of Newlin Township*, 765 A.2d 1187, 1189-90 (Pa. Cmwlth. 2001); *Omnipoint Communications v. City of Scranton*, 36 F. Supp. 2d 222, 226 & n.7 (M.D. Pa. 1999).

Reading the provisions of the Ordinance as a whole, we conclude that a cellular tower bears enough of a resemblance to the commercial and manufacturing uses permitted in the Ordinance, and also to a satellite television antenna, that the ZHB could reasonably conclude that Pegasus' proposed tower is an allowable use via a special exception and/or the catch-all provisions of the Ordinance.[5]  In holding otherwise, the trial court, we believe, read the decision of the ZHB in an overly technical manner.  To us, it is readily apparent that the ZHB concluded that a cellular tower was permitted in the commercial and manufacturing districts, on the ground that it is similar to a satellite television antenna and is commercial by nature, with the only caveat being that Pegasus must meet the other criteria necessary to obtain a special exception.  (*See* ZHB's Conclusions of Law Nos. 8-10, 14.)  A zoning hearing board, as well as a zoning officer, is entitled to deference in interpreting a zoning ordinance, *see Kohl v. New Sewickley Township Zoning Hearing Board*, 108 A.3d 961, 968-69

---

[4] In general, a cellular tower "houses the electronic communications equipment along with an antenna to support cellular communication in a network.  A cell tower is usually an elevated structure with the antenna, transmitters and receivers located at the top." https://www.techopedia.com/definition/6408/cell-tower (last visited January 22, 2018).

[5] Because Pegasus' proposed use is permitted in these districts, and this is enough to save the Ordinance from a *de jure* exclusionary challenge, we do not decide whether the use is permitted in the C-3 District.

(Pa. Cmwlth. 2015), and the trial court failed to afford the ZHB and its Zoning Officer that deference here.

To the extent that the trial court assessed the height requirements of the pertinent districts as restricting the ZHB's authority to grant a conditional use, this was done in error. Any conditions relating to dimensional issues, such as height, are not a basis for denying a conditional use application because compliance with a height requirement is not an express standard or criteria for granting a conditional use under the Ordinance. *See In re Thompson*, 896 A.2d 659, 670 & 681 (Pa. Cmwlth. 2006). Consequently, the ZHB could not have denied Pegasus' application for a use variance on the ground that the proposed tower failed to comply with a height requirement. Moreover, notwithstanding the fact that section 602 does not contain a height requirement, the height requirements of sections 601 and 701 relate to the size of "buildings" and appear to be facially inapplicable to cellular towers. Instead, the height requirement for a satellite television antenna is contained in a more specific and seemingly controlling provision of the Ordinance, section 1105, and is one in which Pegasus could seek an exemption from by way of a permit. *See* Ordinance, §1005(b) ("If satellite signals cannot be obtained from a satellite television antenna installed in compliance with the aforementioned height limitation, such antenna may be installed at a greater height, provided that a special satellite use permit is obtained prior to such installation. Such permit shall be issued upon a showing by the applicant that installation at a height greater than 20 feet is necessary for the reception of satellite signals."). Regardless of what height requirement applies, Pegasus can always obtain a dimensional variance. *See* Ordinance, §1702 (providing the ZHB with the authority to grant a variance when an applicant alleges that provisions of the Ordinance inflict

15

unnecessary hardship).  The ZHB has already acknowledged as much.  (ZHB's Conclusion of Law No. 9.)

Importantly, the negative impact, if any, that dimensional restrictions may have on Pegasus' ability, as a practical matter, to obtain a variance and construct a cellular tower is relevant to a *de facto* challenge, and not the current *de jure* claim.  *See Omnipoint Communications Enterprises*, 189 F.Supp.2d 258, 267-69 (E.D. Pa. 2002) (concluding that an ordinance's height restrictions on cellular towers pertain to a *de facto* claim and rejecting that claim on the ground that the ZHB had granted dimensional variances in the past); *see also Township of Exeter v. Zoning Hearing Board of Exeter Township*, 962 A.2d 653, 662-63 (Pa. 2009); *D.C. Guelich Explosives Co. v. Zoning Hearing Board of Mifflin Township*, 523 A.2d 1208, 1211 (Pa. Cmwlth. 1987).  There is notable distinction between dimensional and use variances, *see Hertzberg v. Zoning Board of Adjustment of Pittsburgh*, 721 A.2d 43, 47 (Pa. 1998), and when an applicant seeks a dimensional variance within a permitted use, a *de facto* claim may be available when the dimensional restrictions verify "conditions that the use cannot in fact be accomplished."  *Township of Exeter*, 962 A.2d at 659; *see APT Pittsburgh LP v. Penn Township*, 196 F.3d 469, 476-78 (3d Cir. 1999); *Wireless Development Group, LLC, v. Penn Township Zoning Hearing Board and Township of Penn*, (Pa. Cmwlth., No. 1339 C.D. 2012, filed June 19, 2013) (unpublished).

Here, however, Pegasus never sought a dimensional variance.  It therefore cannot be determined whether the Ordinance, as applied to particular situations within the districts, has the effect of prohibiting the erection of cellular towers.  The fact that the Ordinance theoretically permits cellular towers as a use is enough to defeat the present *de jure* claim.  Whether other restrictions in the Ordinance would make it

16

virtually impossible, or practically infeasible, to construct a cellular tower in reality, i.e., *de facto* exclusion, is a different issue altogether and is not before this Court.

Therefore, because the Ordinance does not, on its face, totally ban communication towers, and the Ordinance was reasonably interpreted by the ZHB to allow for such use, we cannot conclude that the Ordinance is *de jure* exclusionary. Accordingly, we reverse the order of the trial court.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pegasus Tower Co., Ltd., and Open :
Range Communications, Inc. :
  :
  :
v. : No. 192 C.D. 2017
  :
Upper Yoder Township Zoning :
Hearing Board and Harry Pote and :
Marjorie Pote, William and Carol :
Ann Pruchnic, George and Rani Frem :
and Samuel and Francine Glass :
  :
Pegasus Tower Co., Ltd., and Open :
Range Communications, Inc. :
  :
  :
v. :
  :
Upper Yoder Township Zoning :
Hearing Board :
  :
Appeal of: Harry and Marjorie :
Pote, William and Carol Ann :
Pruchnic, George and Rani Frem, and :
Samuel and Francine Glass :

## ***ORDER***

AND NOW, this 23rd day of January, 2018, the January 20, 2017 order
of the Court of Common Pleas of Cambria County is reversed.

_____
PATRICIA A. McCULLOUGH, Judge