**JOJO OIL COMPANY, INC.,**
**d/b/a Airline Petroleum**

v.

**DINGMAN TOWNSHIP ZONING HEARING BOARD and Sunrise Lake Association and Conashaugh Lake Community Association**

**Appeal of: Sunrise Lake Association and Conashaugh Lake Community Association.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 11, 2013.
Decided Sept. 13, 2013.

---

Raymond A. Waldron, III, Hawley, for appellants.

Joseph A. O'Brien, Clarks Summit, for appellee.

BEFORE: McGINLEY, Judge, McCULLOUGH, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge McGINLEY.

Sunrise Lake Association and Conashaugh Lake Community Association (Objectors [1]) contest the order of the Court of Common Pleas of Pike County (trial court) which reversed the Dingman Township Zoning Hearing Board's (ZHB) denial of the application of JoJo Oil Company, Inc., d/b/a Airline Petroleum (Applicant) for a special exception permit for a "bulk fuel transfer station."

1. Objectors are neighboring property owner associations.

Applicant was in the business of selling and delivering propane [2] and home heating oil. In March 2011, Applicant submitted a zoning application to the Township for a bulk fuel transfer station in a RC—Resort/Commercial Zoning District [3] on a 3.3–acre parcel (Property). The proposed use would include two underground 20,000–gallon heating oil tanks, one aboveground 30,000–gallon propane tank, a truck-loading area and a turn-around. The site would be unmanned and there would be no office or other structure on the site. The proposed tanks were double-walled and enclosed by an eight-foot high chain link fence topped with barbed wire.

The Zoning Officer determined that a "bulk fuel transfer station" use was not a permitted, conditional or special exception use in *any* zoning district in the Township. That being the case, the Zoning Officer proceeded in accordance with Section 105 of the Dingman Township Zoning Ordinance (Zoning Ordinance) entitled: "Uses Not Provided For" which sets forth the procedure to be used when a proposed use is neither permitted nor prohibited in the Zoning Ordinance.[4] This "savings provision," as it is often referred to, provides:

### Section 105–Uses Not Provided For

*Whenever, in any District established under this Ordinance, a use is neither specifically permitted nor denied and an application is made by the property owner to the Zoning Officer for such use, the application shall be referred to the Zoning Hearing Board which shall have the authority to permit the use; or deny the use, as a Special Exception. The use may be permitted if it is similar to and compatible with permitted uses (uses listed as permitted, conditional uses, and special exceptions) in the district, and in no way conflict with the general purpose and intent of this Ordinance and the use is not permitted in any other district.* The Zoning Hearing Board may attach reasonable conditions to the issuance of a permit incorporating exiting standards from similar uses in the district and such

2. Propane is one of a number of types of liquefied petroleum gas (LPG) products.

3. The RC Zoning District is "designed to provide areas of more intensive commercial and resort activity on roads adequate to handle traffic for those activities." Section 305 of the Dingman Township Zoning Ordinance.

The following uses are "permitted" in an RC Zoning District: Essential Services, Low Impact Retail and Service Establishments, Municipal Parks and Playgrounds, No Impact Home–Based Businesses, School Bus Shelters, Timber Harvesting, Nurseries, Residences Connected to Other Permitted Uses.

The following uses are designated "conditional uses" in an RC Zoning District: Animal Hospitals, Banks, Bed & Breakfast Establishments, Business & Professional Offices, Car Washes, Churches, Commercial Flea Markets, Commercial Recreation, Convenience Stores, Day Care Facilities, Drive–In Businesses, Food Establishments, Gasoline Stations, Greenhouses, Health Care Facilities, Home

Occupations, Inns, Light Manufacturing, Model Homes, Motels & Hotels, Motor Vehicle Sales & Service, Retail & Service Establishments, Sales & Service of Equipment, Self–Storage Facilities, Shopping Centers & Malls, Specialty Shops, Theaters, Undertaking Establishments, Wholesale Businesses, Mixed–Use Projects, Drive-through Businesses, Minor Day Care Uses.

The following uses are designated as "special exceptions" in an RC Zoning District: Communications Towers, Public & Semi–Public Uses, Kennels.

4. The application was also reviewed by the Township Engineer for his recommendation. By letter dated May 24, 2011, the Township Engineer determined that the proposed use was appropriate for the RC Zone. The application was then reviewed by the Township Planning Commission which recommended to the ZHB that the application be granted because the proposed use was a suitable use in the RC Zoning District and the site was a suitable location for the use.

other restrictions as the Board may deem appropriate. (Emphasis added).

Zoning Ordinance, Section 105.

The standards for a Special Exception are set forth in Section 404.2 of the Zoning Ordinance:

404.2 Special Exceptions—Uses specified as special exceptions under this Ordinance shall be permitted only after review by the Planning Commission and review and approval by the Zoning Hearing Board. Such approval shall be based on the determination that the *use is appropriate to the specific location for which it is proposed, consistent with the Comprehensive Plan, in keeping with the purpose and intent of the Ordinance.* The following criteria shall be used as a guide in evaluating a proposed use:

a. The presence of adjoining similar uses.

b. The presence of an adjoining district in which the use is permitted.

c. The need for the use in the area proposed, as established by the Comprehensive Plan.

d. Sufficient area to effectively screen the use from nearby different uses.

e. Conditions such that there were several potential sites for the use but not a sufficient need to establish a permitting zone district or to leave the District open to indiscriminate placement of such use.

f. Sufficient safeguards such as parking, traffic control, screening and setbacks can be effectuated to remove any potential adverse influence the use may have on adjoining uses.

g. The burden of proof shall remain with the applicant to show compliance with all standards and the burden shall never shift to the Township.

h. Applicants shall submit plot plans in sufficient detail to provide the Board and the Planning Commission with enough information to properly evaluate the proposed planned use.

Zoning Ordinance, Section 404.2 (Emphasis added).

The ZHB held a hearing on July 26, 2011. Approximately 80–100 people attended. Applicant presented the testimony of Joseph Hudak (Hudak), a licensed professional engineer. Hudak prepared the sketch plans and application. Hudak described in detail the tanks and where they would be situated on the Property. The proposed use would meet the required buffers for front, side and rear setbacks according to the Zoning Ordinance. He indicated that the Applicant "actually exceeded them for the side yards and the rear yards." Notes of Testimony, July 26, 2011, (N.T.) at 20; Reproduced Record (R.R.) at 22a. The proposed use would be surrounded by an eight-foot high chain link fence, with plastic strip shielding and barbed wire on top. N.T. at 20; R.R. at 22a. The plan was to plant ground shrubbery, and plant nondeciduous evergreen trees as a screen.

With regard to the potential for fire and explosion hazards, Hudak testified that the facility would meet all National Fire Protection Association (NFPA) requirements and other federal and state rules and regulations regarding the storage of LPG products. N.T. at 22; R.R. at 24a. Hudak opined that the proposed use was most similar to a "gasoline station" which was designated as a "conditional use" in an RC Zoning District. N.T. at 28–29; R.R. at 30a–31a. There would be no vibration or noise beyond the site boundaries. Nor would there be any smoke, odor or air pollution. He testified that the fuel tanks had adequate safety devices to prevent

surface or groundwater contamination. N.T. at 25; R.R. at 27a.

On cross-examination, Hudak indicated that the nearest residence from the above-ground tank would be approximately 185 feet. N.T. at 38; R.R. at 40a. Hudak explained that the term "BLEVE" stood for boiling liquid expanding vapor explosion which could be a concern with above-ground propane tanks. N.T. at 39; R.R. at 41a. He indicated that he was not an expert on this subject and offered nothing further regarding the subject other than to indicate that Applicant was not considering burying the tank, or installing an automatic water deluge system to protect against BLEVE. N.T. at 39–40; R.R. at 41a–42a.

Applicant also presented the testimony of its Director of Operations, John Occhipiniti (Occhipiniti), who testified that Applicant had other similar facilities in Coolbaugh Township, Monroe County, Pennsylvania and in Laceyville, Pennsylvania. N.T. at 50; R.R. at 52a. Applicant never had a safety issue or issue with ground water contamination. N.T. at 51; R.R. at 53a. Occhipiniti confirmed that the facility would not be manned, however, the tanks would be equipped with electronic monitoring equipment and automatic shut-off valve in case of a leak or spill. N.T. at 67–68; R.R. at 69a–70a. He indicated that the local fire department would be trained to handle any emergencies that may occur.

Objectors also presented witnesses. The main contention of Objectors was that the proposed 185–foot setback was insufficient to protect adjacent property owners from the obvious adverse impacts of a potential explosion. They also had concerns about traffic safety issues. Richard Stryker (Stryker), a licensed professional engineer, testified that there were 150 homes within a 1,000–foot radius of the Property. N.T. at 115; R.R. at 117a. He indicated that the nearest residence is about 200 feet from the Property. N.T. at 117; R.R. at 119a. He visited the Combined Energy Site, a similar bulk fuel storage facility located on Route 739 in neighboring Delaware Township. Stryker noted that it was not near any residential development and employees were on site to manage the facility and monitor the fuel tanks. N.T. at 119–120; R.R. at 121a–122a.

Critically, on cross-examination, Stryker agreed that the RC Zoning District was an appropriate zone for this type of use. N.T. at 133; R.R. at 135a.

Several property owners testified that they were within 300 to 1,000 feet of the proposed facility. They objected to the location of the proposed bulk fuel transfer station based on a number of concerns in including increased tanker truck traffic, noise, decreased home values, potential dangers associated with BLEVE, water contamination, and the proximity of the propane tank to a school bus stop.

On September 29, 2011, the ZHB denied Applicant's request because Applicant:

> ... failed to meet its initial burden of proving that the proposed use, a bulk fuel transfer station, is a use appropriate to the specific location for which it is proposed, as required by Section 404.2 of the Ordinance. Further, the applicant has failed to meet much of the criteria set forth under Section 404.2 to be used as a guide in evaluating a proposed use.

ZHB Decision, September 29, 2011, at 12.

Specifically, the ZHB found that Applicant failed to show the presence of adjoining similar uses. It noted that there were sixteen home heating fuel delivery services operating in the area, so there was no "unmet need" for the proposed use in that specific location. It also found that there

was insufficient area to effectively screen the area to reduce its adverse impact on existing adjacent residential uses. The ZHB also found that it was not possible to impose "sufficient safeguards to remove any potential adverse influence" (e.g., risk of explosion) the proposed use had on existing adjoining uses.

Applicant appealed to the trial court. No new testimony or evidence was admitted. By order dated May 24, 2012, the trial court reversed the ZHB. The trial court found that the ZHB was prohibited from setting different standards than those set by the Propane and Liquefied Petroleum Gas Act (also known as "Act 61"),[5] 35 P.S. §§ 1329.1–1329.13, which contains setback and other safety requirements. Specifically, the trial court determined that "because the Gas Act [Act 61] regulations contain setback and other safety requirements, Dingman Township may not regulate these requirements by setting different requirements than the state and must let the state standards govern." Trial Court Opinion, May 24, 2012, at 6. The trial court determined that Applicant met those Section 404.2 standards which were not preempted by Act 61.

The trial court found that when the burden shifted to Objectors, they failed to present sufficient relevant evidence to negate the appropriateness of the application. The Objectors argued there were inadequate setbacks to protect adjacent property owners and the inability to reduce its adverse impacts on adjacent residential uses. As far as the adverse consequences, such as an explosion of the above-ground propane tank, the trial court found that there was a lack of testimony as to the level of risk of an explosion. The trial court reasoned that the industry is highly regulated and that Objectors merely speculated as to the risk of explosion.

On appeal,[6] Objectors raise three issues: (1) whether the trial court erred when it determined that Applicant met its burden of proof by proving compliance with all specific conditions and requirements of the Zoning Ordinance; (2) if Applicant met its burden, and the burden of proof, in fact, shifted to the Objectors, whether Objectors met their burden of showing that the use was not appropriate for the Property by evidence of substantial detriment to public safety; and (3) whether the trial court erred when it determined that the ZHB's decision was preempted by Act 61?

## I.

### *Did the Trial Court Err in its Application of Section 105 of the Zoning Ordinance?*

A clause, such as Section 105 of the Zoning Ordinance, is often referred to as a "savings clause." As this Court noted in *Cellco Partnership v. North Annville Township Zoning Hearing Board*, 939 A.2d 430, 434 (Pa.Cmwlth.2007)[7], "[i]t is

---

**5.** Act of June 19, 2002, P.L. 421, No. 61, *as amended.*

**6.** When no additional evidence is taken following the determination of a zoning hearing board, this Court's scope of review is limited to determining whether the zoning hearing board committed an error of law or a manifest abuse of discretion in rendering its decision. An abuse of discretion occurs when the findings are not supported by substantial evidence in the record. Substantial evidence is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion. *Airport Prof'l Office Ctr. 100 Condo. Ass'n v. Zoning Hearing Board of Moon Twp.*, 20 A.3d 649, 651 (Pa.Cmwlth.2011).

**7.** In *Cellco*, this Court analyzed a similar "Use Not Provided For" (also referred to in that case as a "savings provision"). There, Section 304.5 of the North Annville Township Zoning Ordinance provided that "when a specific use is neither permitted nor prohibited in the schedule of district regulations, the [ZHB] shall make a determination as to the similari-

impossible for a legislative body to anticipate every conceivable use of land."

In Dingman Township, where a use is not legislatively provided for (e.g., it is not listed anywhere in the Zoning Ordinance as a special exception, or a conditional use, or a permitted use) Section 105 of the Zoning Ordinance provides that an applicant who seeks to establish such a use in a particular district, must first demonstrate that the proposed use is "similar to or compatible with" permitted uses in that district and that it does not "conflict" with the general intent and purpose of the Zoning Ordinance. If an application involves a "use not provided for" the threshold test under Section 105 is in addition to the requirements for all other special exceptions.

If this threshold burden is met and the ZHB is satisfied that the use is indeed suitable for that zoning district (based on its similarity to other *articulated* special exception, conditional and permitted uses) then the use may be permitted *if* the applicant satisfies the special requirements for a Special Exception under Section 404.2. The determination of appropriateness under Section 105 is akin to a determination that the use should be treated as one of the other listed special exception uses in the ordinance. In other words, had the municipality anticipated the use when it drafted the ordinance, it would have included it as a special exception.

With regard to a "Use Not Provided For," until the threshold burden is met, and the proposed use is demonstrated by the applicant to be appropriate in the zoning district (as similar to or compatible with other uses in the zoning district) it is premature to engage in a Section 404.2 Special Exception analysis. The proposed use must be similar to and compatible with the other allowable uses in the zoning district to be entitled to treatment and consideration as a special exception. This makes perfect sense because there can be no presumption of the suitability of a Special Exception use in a particular zoning district if the use was never even acknowledged by the legislating body in the first instance.

 By contrast, in the case of a use permitted by Special Exception, there is a "presumption" that the use is a "conditionally permitted use, legislatively allowed if the standards are met." *Bray v. Zoning Board of Adjustment of Philadelphia*, 48 Pa.Cmwlth. 523, 410 A.2d 909, 911 (1980). Unlike a "Use Not Provided For," a Special Exception use has already been designated to be "appropriate" for the zoning district. That is, it is presumptively consistent with the public health, safety and welfare. *Bray*, 410 A.2d at 911.

 Here, Objectors contend that the trial court erred because Applicant failed to establish that the proposed bulk fuel transfer station was "similar to and compatible with" other permitted uses in the

---

ty of compatibility of the use in question to the permitted uses in the district, basing the decision on the overall intent stipulated for the district." *Cellco*, 939 A.2d at 434. The structure at issue was a cellphone tower. The words "cellphone tower" or their equivalent did not appear in the zoning ordinance. Verizon argued that it should be allowed to construct a cellphone tower in the R–1 (low density) zoning district because a cellphone tower was similar to a "principal utility structure" and a "municipal structure" which were permitted "anywhere." *Cellco*, 939 A.2d at 435. The ZHB denied Verizon's request finding that a cellphone tower was "wholly dissimilar" to a principal utility structure such as an electrical generating plant. *Cellco*, 939 A.2d at 433. The court of common pleas of Lebanon County affirmed. On appeal, this Court upheld the decision of the ZHB and common pleas court.

RC Zoning District. They claim that the trial court disregarded this threshold burden and delved directly into whether Applicant met the standards for a Special Exception set forth in Section 404.2. Objectors contend that, in so doing, the trial court erroneously gave Applicant the benefit of a presumption to which Applicant was not entitled because "[t] he use was not entitled to the same presumption that all listed Special Exceptions are accorded." Objectors' Brief at 13.

Applicants argue "there are no other uses in the RC [Zoning District] that are similar to the Use proposed and that includes a Gasoline Station." Objectors' Brief at 15. They claim the two uses are immeasurably different because gasoline is stored underground and is not pressurized. They claim in their Brief that they "do not concede" that this use "was considered similar to another RC zone use." Objectors' Brief at 15. However, the problem with Objectors' argument is that it is untimely and conflicts with their position before the ZHB that that the use was appropriate in the RC Zoning District.

This Court has thoroughly reviewed the transcript and must conclude that Objectors were well aware of the issue involving the appropriateness of a bulk fuel transfer station in a RC Zoning District. The Planning Commission initially recommended that the application be granted based on its conclusion that the use was appropriate in the RC Zoning District. Before the ZHB, Applicant's expert, Hudak, opined that the zoning district that "would contain uses most similar to this one" was the RC Zoning District. N.T. at 28; R.R. at 30a. Rather than taking issue with the appropriateness of the RC zoning district, Objectors argued instead that there were *other* available sites *in the RC Zoning District* that were more suitable for the use because they were larger than

3.3 acres, and situated father away from residences. At no time did Objectors make the argument under Section 105 that the use was not appropriate in the RC Zoning District. In fact, Objectors' expert, Stryker, unequivocally agreed that the RC Zoning District was the appropriate place for a bulk fuel transfer station. He testified:

Q. Given your knowledge of the Dingman Township Ordinance, which you have reviewed, the RC Zone would appear to be an appropriate zone for this type of use, would it not?

A. Yes, sir.

Q. That's because of other similar uses?

A. Yes, sir.

N.T. at 133; R.R. at 135a.

Thus, despite Objectors' claims to the contrary, all parties, *including Objectors,* agreed that the bulk fuel transfer station was "similar to and compatible with" other uses in the RC Zoning District and, therefore, the use was appropriate in that particular zoning district. That initial burden of Section 105 having been met, the *presumption* of appropriateness arose. It was, therefore, proper for the trial court to proceed on the application as though it was one for special exception under Section 404.2 of the Zoning Ordinance. Contrary to Objectors' argument, the trial court did not extend the presumption to the proposed use in error. The trial court properly interpreted and applied Section 105 of the Zoning Ordinance.

▪ To satisfy its burden on its application for special exception, Applicant was required to demonstrate that the proposed use met the specific objective criteria of the Zoning Ordinance. *Greth Dev. Grp., Inc. v. Zoning Hearing Board of L. Heidelberg Township,* 918 A.2d 181 (Pa. Cmwlth.2007). "Specific subjective crite-

ria" has been characterized as the "reasonable definite conditions" that are "detailed in the ordinance." *Bray*, 410 A.2d at 910. These definite criteria are in contrast to the general, non-specific or non-objective requirements such as health and safety. *Id.*

In the context of this case, Section 404.2 contained the specific subjective criteria for a special exception. Specifically, Applicant was required to demonstrate that the use was appropriate to the *specific location* (as opposed to the appropriateness of the zoning district mentioned in Section 105) for which it is proposed, consistent with the Comprehensive Plan, in keeping with the purpose and intent of the Ordinance. In furtherance of its burden, Applicant submitted evidence that bulk fuel transfer stations were highly regulated by the Department of Labor and Industry and that the proposed use met all those "state" standards; the use would comply with all National Fire Protection Association standards and training for local fire departments; all yard setback requirements would be met; buffers and evergreen trees as additional screens would be utilized, there would be no noise, odor, waste material or vibration; motion sensor lights with diffusion shields would be utilized; there would be minimal truck traffic and only during restricted hours; and that other sites in the RC Zoning District were cost prohibitive.

The trial court found that Applicant met all specific, objective criteria that were not preempted by Act 61.

The trial court *then* shifted the burden to Objectors to show that the proposed bulk fuel transfer station was inappropriate given the health, welfare, and safety of the community. Objectors contend it was error to shift the burden to them. This Court must disagree.

Once an applicant has met his burden of proof and persuasion, a presumption arises that it is consistent with the health, safety and general welfare of the community. *Greaton Properties, Inc. v. L. Merion Township*, 796 A.2d 1038 (Pa. Cmwlth.2002). The burden then shifts to the objectors to present evidence and persuade the ZHB that the proposed use will have a detrimental effect on the health, safety and welfare or will conflict with the expressions of general policy contained in the ordinance. *Bray*.

The trial court was entirely correct when it shifted the burden to Objectors after it found that Applicant satisfied the met the specific, objective criteria of Section 404.2 of the Zoning Ordinance.

## II.

***Did the Trial Court Err When it Determined that Objectors Failed to Meet Their Burden to Show That the Proposed Use Was Not Appropriate for the Property By Evidence of Substantial Detriment to the Public's Safety?***

Objectors contend, even if the burden shifted to them, the trial court erred when it concluded that they failed to meet their burden to demonstrate the bulk fuel transfer station was not appropriate at the Property. They claim that they successfully demonstrated through their witnesses that the bulk fuel transfer station posed a significant threat to public safety.

A proposed use's detrimental effect on public safety must be established by evidence. *Zoning Hearing Board of Upper Darby v. Konyk*, 5 Pa.Cmwlth. 466, 290 A.2d 715 (1972). The evidence must establish that the proposed use involves "a high degree of probability that it will (substantially) affect the health and safety of the community." *Manor Healthcare v.*

*Zoning Hearing Board,* 139 Pa.Cmwlth. 206, 590 A.2d 65, 71 (1991). Mere speculation as to a possible harm is insufficient. In *Manor Healthcare,* this Court explained:

> The objectors, when presenting evidence to contest an application for a special exception to the zoning ordinance, must raise specific issues concerning the proposal's detrimental effect on the community before the applicant is required to persuade the fact finder that the intended use would not violate the health, safety, and welfare of the community. The objectors cannot meet their burden by merely speculating as to possible harm, but instead must show a high degree of probability that it will substantially affect the health and safety of the community.

*Manor Healthcare,* 590 A.2d at 71.

In *Manor Healthcare,* this Court held that the testimony of neighbors that the proposed skilled nursing facility would add to an already existing traffic problem was insufficient to establish a "high degree of probability" of specific, detrimental effects.

Here, there was no expert testimony regarding the likelihood of an explosion. Objectors' witnesses testified generally about the possibility of an explosion and their concerns about living in proximity of the facility. There was no evidence of prior problems with such facilities. The trial court held, and this Court agrees, that the evidence presented by Objectors did not establish a high degree of probability that the use would substantially affect the health and safety of the community. The speculative fear of an explosion did not establish a substantial risk to the public health, welfare and safety of the community to warrant denial of a permit.

The trial court did not err when it concluded that Objectors failed to meet their burden to prove that the bulk fuel transfer station involved a high degree of probability that it would substantially affect the health and safety of the community.

## III.

### *Did the Trial Court Err in Its Application of the Preemption Doctrine?*

■ In their final issue, Objectors argue that the trial court erred when it concluded that the ZHB violated the "preemption doctrine." They argue that the ZHB did not address any "technical standards" covered by Act 61 and the ZHB did not attempt to impose any regulations which conflicted with Act 61. The ZHB was required and authorized to "zone" the use because it was "a use not provided for." The ZHB's determination was merely an attempt to control only the appropriate location of the facility within the zoning plan for the Township which was within the Township's purview. They claim the ZHB simply found that the small size of the Property, its close proximity to residences, the adverse effect on existing adjacent residential uses, lack of sufficient safeguards, traffic concerns and incompatibility with adjoining uses made it inappropriate for that location.

Section 15 of Act 61, 35 P.S. § 1329.15, includes the following express preemption clause:

**Preemption of municipal regulations.**

(a) Rights reserved by Commonwealth.—The Commonwealth specifically reserves the sole right and ability to regulate any and all matters related to the operation of the Liquefied Petroleum Gas Industry, in accordance with this act.

(b) Regulations not to conflict.—

(1) *No municipality or any other political subdivision shall adopt or enforce*

*any ordinance or regulation which differs from or conflicts in whole or in part with the provisions of this act or with the regulations promulgated under this act with regard to permits, licensing standards, fees, construction, installation, maintenance, operation, inspection, location or placement of LPG containers or LPG facilities or any other matters related to this industry within this Commonwealth, provided, further, that a municipality may not prohibit placement of any LPG container in any existing yard setback area except to establish an absolute setback of ten feet from a residential property line.* (Emphasis added).

(2) *A municipality shall retain the right pursuant to local zoning ordinance to require any LPG facility to locate within approved residential, industrial, commercial or other zones* and to require an LPG facility to obtain zoning permits, pay zoning fees and undergo inspections related to the zoning of the LPG facility. A ny building at an LPG facility shall comply with the municipal standards applied to primary structures. (Emphasis added).

(3) *Except as provided in this subsection, a municipality may not prohibit or otherwise regulate the use of storage of LPG, including the location or replacement of storage tanks for LPG.* (Emphasis added).

■ When examining an express preemption clause, the task of statutory construction must in the first instance focus on the plain wording of the express preemption clause, which necessarily contains the best evidence of the legislature's preemptive intent. *Dooner v. Di Donato*, 601 Pa. 209, 971 A.2d 1187 (2009).

By its express language, Section 15(b)(2) of Act 61, 35 P.S. § 1329.15(b)(2), specifically bars a municipality from adopting or enforcing any law which regulates *the location* of LPG containers, except a municipality shall retain the right to determine which zoning district would be most appropriate for such use. Undoubtedly, the Commonwealth specifically reserved to itself the sole right to regulate all matters related to the operation of the LPG industry, including the location of LPG facilities.

Here, the ZHB determined that Applicant's proposed bulk fuel transfer station was not appropriate for the location for which it was proposed in the RC Zoning District. Reviewing the Zoning Ordinance's Section 404.2 Special Exception standards for the RC Zoning District, the ZHB considered the small size of the parcel, the proximity of the bulk fuel transfer station to residences, lack of sufficient safeguards, traffic concerns, its incompatibility with adjoining uses and, also, that the proposed site was surrounded on three sides by residences and on the other side by Conservation and Parks Zoning District.

The trial court reversed on the grounds that the ZHB had no right to "regulate" setback and other safety requirements by setting different requirements than the state. It found that any safety concerns of the use were not for the ZHB, it was for the Commonwealth to determine under its regulatory scheme. The trial court found that Act 61 "contains requirements involving location, construction and safety of all aspects of the propane industries." Trial Court Opinion, May 24, 2012, at 5–6. The trial court concluded that the ZHB was prohibited from imposing Special Exception standards that were different from those imposed by Act 61. The trial court also found that Applicant's proposal contained sufficient setbacks to comply with the Special Exception standards of Section 404.2 of the Zoning Ordinance. The trial court held that "[w]hile the municipality

and Objectors believe the setbacks should be longer, the length proposed by Applicant meets the state standard pursuant to [Act 61] regulations, 35 Pa.Code § 13.1(a)(5)." Trial Court Opinion, May 24, 2012, at 6. This Court must agree with the trial court's assessment.

One of the areas covered by Act 61 is setbacks. As indicated above, Section 15(b)(1) of Act 61, 35 P.S. § 1329.15(b)(1), specifically provides that "a municipality may not prohibit placement of a LPG container in any existing yard setback area except to establish an absolute setback of ten feet from a residential property line." While Section 15(b)(2) of Act 61, 35 P.S. § 1329.15(b)(2), specifically recognizes a municipality's right to perform its traditional zoning function to restrict the zone in which bulk fuel transfer station may be located, it does not permit a municipality to restrict location based on its determination that such a facility is inherently dangerous. As the trial court concluded, the safety of a bulk fuel transfer station is for the Commonwealth to regulate under its regulatory scheme. The ZHB's interference with this regulatory scheme was invalid by virtue of the preemption doctrine because the Commonwealth has determined that it, and not the local zoning board, is the final authority with respect to such concerns. *Range Resources v. Salem Township,* 600 Pa. 231, 964 A.2d 869, 876–877 (2009).

The trial court did not commit an error of law with respect to its application of the preemption doctrine.

The order of the trial court is affirmed.

### ORDER

AND NOW, this 13th day of September, 2013, the order of the Court of Common Pleas of Pike County in the above-captioned case is hereby affirmed.

DISSENTING OPINION BY Judge McCULLOUGH.

I respectfully dissent because I believe that the Court of Common Pleas of Pike County (trial court) erred in concluding that JoJo Oil Company, Inc., d/b/a Airline Petroleum (Applicant) met the requirements of sections 105 and 404.2 of the Dingman Township (Township) Zoning Ordinance (Ordinance) for a special exception permit for a bulk fuel transfer station.

The facts are aptly set forth by the Majority. Applicant was in the business of selling and delivering propane and home heating oil. Applicant submitted a zoning application to the Township's zoning officer for a bulk fuel transfer station consisting of two underground 20,000–gallon heating oil tanks, one above-ground 30,000–gallon propane tank, a truck-loading area, and a turn-around. The site would be unmanned and enclosed by an eight-foot high chain link fence topped with barbed wire. Applicant sought to construct this facility in a RC–Resort/Commercial zoning district and only approximately 185 feet from the nearest residence. The zoning officer determined that a bulk fuel transfer station was not a permitted, conditional, or special exception use in any zoning district in the Township.

In accordance with section 105 of the Ordinance, the zoning officer referred the application to the Township's Zoning Hearing Board (ZHB). Section 105 addresses the situation where a use is not provided for in the Ordinance. Specifically, section 105 states that:

> Whenever, in any District established under this Ordinance, a use is neither specifically permitted nor denied and an application is made by the property owner to the Zoning Officer for such use, the application shall be referred to the Zoning Hearing Board which shall

have the authority to permit the use; or deny the use, as a Special Exception. *The use may be permitted if it is similar to and compatible with permitted uses (uses listed as permitted, conditional uses, and special exceptions) in the district, and in no way conflicts with the general purpose and intent of this Ordinance and the use is not permitted in any other district.* The Zoning Hearing Board may attach reasonable conditions to the issuance of a permit incorporating existing standards from similar uses in the district and such other restrictions as the Board may deem appropriate.

(Emphasis added).

Section 404.2 of the Ordinance provides that:

Uses specified as special exceptions under this Ordinance shall be permitted only after review by the Planning Commission and review and approval by the Zoning Hearing Board. Such approval shall be based on the determination that the *use is appropriate to the specific location for which it is proposed, consistent with the Comprehensive Plan, in keeping with the purpose and intent of the Ordinance.* The following criteria shall be used as a guide in evaluating a proposed use:

a. The presence of adjoining similar uses.

b. The presence of an adjoining district in which the use is permitted.

c. The need for the use in the area proposed, as established by the Comprehensive Plan.

d. Sufficient area to effectively screen the use from nearby different uses.

e. Conditions such that there were several potential sites for the use but not a sufficient need to establish a permitting zone district or to leave the District open to indiscriminate placement of such use.

f. Sufficient safeguards such as parking, traffic control, screening and setbacks can be effectuated to remove any potential adverse influence the use may have on adjoining uses.

g. The burden of proof shall remain with the applicant to show compliance with all standards and the burden shall never shift to the Township.

h. Applicants shall submit plot plans in sufficient detail to provide the Board and the Planning Commission with enough information to properly evaluate the proposed planned use.

(Emphasis added).

Before the ZHB, Applicant presented the testimony of Joseph Hudak (Hudak), a licensed professional engineer. Hudak testified that the site of the proposed use consisted of slightly more than three acres, with setbacks of 100 feet, double the fifty-foot requirement of the Ordinance. (R.R. at 19a, 22a.) Hudak stated that the tanks would be double-walled and monitored to protect against leaks, and will comply with all state and federal requirements for fire protection. (R.R. at 17a, 24a.) When asked what use the bulk fuel transfer station was "most like," Hudak responded, "the gasoline station," which is a conditional use in a RC zoning district. (R.R. at 31a.) Hudak explained that both uses require storage of fuel in underground tanks. (R.R. at 20a.)

On cross-examination, Hudak conceded that there are other larger, unoccupied areas within the Township's RC zoning district. (R.R. at 36a.) Hudak stated that the nearest residential property was approximately 185 feet away from the above-ground propane storage tank and that he was unaware of the extent of the blast zone resulting from a boiling liquid expanding vapor explosion. (R.R. at 40a–

41a.) Hudak acknowledged that he was unaware of any current plans for an automatic water deluge system to prevent this type of overheating and explosion. (R.R. at 41a.) With respect to the comparison between the bulk fuel transfer station and gasoline station uses, Hudak acknowledged that gasoline is not stored under pressure, but that propane is, and that the proposed site would not be manned. (R.R. at 42a–43a, 47a.)

Applicant also presented the testimony of John Occhipinti (Occhipinti), its director of operations. Occhipinti testified that the gasoline station use is very similar to the proposed bulk fuel transfer station use, but with less traffic. (R.R. at 57a.) Occhipinti noted that many gasoline stations utilize propane heat or have a propane filling station and maintain 1,000 to 2,000 gallon propane storage tanks. *Id.* Occhipinti indicated that Applicant serves about 400 customers in the area and the proposed site would allow for increased storage and lower delivery costs. (R.R. at 57a, 60a.) Regarding safety precautions, Occhipinti stated that each tank would be equipped with monitors and an emergency shutoff. (R.R. at 69a–70a.)

On cross-examination, Occhipinti opined that gasoline was as volatile and explosive as pressurized propane. (R.R. at 82a.) Comparing the uses, Occhipinti acknowledged that gasoline tanks are underground. (R.R. at 83a.) Similar to Hudak, Occhipinti indicated that there were no plans for an automatic water deluge system for the above-ground propane tank and that the nearest home is only a few hundred feet away. (R.R. at 85a–86a.) Occhipinti also acknowledged the presence of fifteen to sixteen fuel oil/propane suppliers in the area and that a propane tank explosion would certainly affect nearby homes. (R.R. at 89a, 92a.) Upon questioning by the members of the ZHB, Occhipinti explained that the tanks will be monitored remotely and emergency services would be notified if there was a problem. (R.R. at 100a.)

Sunrise Lake Association and Conashaugh Lake Community Association (Objectors), neighboring residential subdivisions, presented their own professional engineer, Richard Stryker (Stryker).[1] Stryker described the residential developments that border the proposed site on two sides, including 105 residential lots within 1,000 feet of the center of the site, with the nearest less than 200 feet away. (R.R. at 113a–14a, 117a, 119a.) Stryker noted that there are larger, similarly-zoned parcels in the Township that would be better suited for this type of project. (R.R. at 122a–23a.) On cross-examination, Stryker conceded that the Township engineer and the Township's planning commission both recommended approval of Applicant's application and that the RC zoning district would be appropriate for this type of proposed use.[2] (R.R. at 130a, 132a, 135a.)

---

**1.** Approximately 80 to 100 persons attended the ZHB hearing, many of whom lived in close proximity to the proposed site. The ZHB heard testimony from seven of these neighboring landowners, each of whom opposed the grant of Applicant's application. Their testimony expressed similar concerns regarding safety, especially with respect to an explosion, property values, traffic, vandalism, and environmental issues, including proximity to a water reservoir. (R.R. at 141a–87a). Several other neighbors also commented during the public-comment portion of the ZHB hearing. (R.R. at 189a–200a.)

**2.** Although the Township's engineer opined that the RC zoning district was appropriate for the proposed use, he did have concerns regarding the particular site chosen by Applicant. In a letter dated May 24, 2011, the Township's engineer stated as follows:

The parcel is located immediately adjacent to a residential subdivision, adequate provi-

Based upon this testimony, the ZHB found that Applicant failed to meet its initial burden of proving that the proposed use of a bulk fuel transfer station was appropriate in the specific location for which it was proposed. Further, the ZHB found that Applicant failed to meet many of the criteria set forth in section 404.2 of the Ordinance. More specifically, the ZHB found, *inter alia,* that: Applicant failed to show the presence of adjoining similar uses, noting that the property was bounded on one side by state game lands and by residential subdivisions in the front and back; a review of the Ordinance reveals no adjoining zoning districts where the proposed use is permitted; the presence of sixteen home heating fuel delivery services operating in the area demonstrates that there is no unmet need for the proposed use in the specific location requested; there is insufficient area to effectively screen the use to reduce its adverse impact on existing adjacent residential uses; and it is not possible to impose sufficient safeguards to remove any potential adverse influence the proposed use would have on existing adjoining uses.

Because the testimony cited above supports the ZHB's findings, I believe that the trial court erred in concluding that Applicant met the requirements of sections 105 and 404.2 of the Ordinance for a special exception permit and, accordingly, would reverse the trial court's order.

sions must be made to ensure that no adverse impact will be realized by the residential use. Considerations should be given to increased setbacks, sufficient buffer and screening areas.

(R.R. at 205a.)