IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Deiter Family, L.P.                          :
                                             : No. 265 C.D. 2015
                    v.                       : Argued:  September 17, 2015
                                             :
City of Easton Zoning Hearing                :
Board and City of Easton and                 :
W. B. Moore, Inc.                            :
                                             :
Appeal of:  W. B. Moore, Inc.                :


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY SENIOR JUDGE FRIEDMAN                    FILED:  November 19, 2015


            W. B. Moore, Inc. (Moore) appeals from the January 27, 2015, order of

the Court of Common Pleas of Northampton County (trial court), which reversed the

decision of the City of Easton Zoning Hearing Board ((ZHB) and concluded that

under the City of Easton Zoning Ordinance (Ordinance), Deiter Family, L.P. (Deiter)[1]

was permitted to install an above-ground 30,000-gallon propane storage tank as a

permitted expansion of a pre-existing nonconforming use.  We affirm.

---

[1] Deiter and amicus curiae, the Pennsylvania Propane Gas Association, filed a consolidated
brief.

On January 31, 2014, Deiter submitted a zoning permit application seeking to install an above-ground 30,000-gallon propane storage tank on property it owns at 1000 Bushkill Drive in the City of Easton (City). The property is located in the River Corridors and Other Green Areas (RC) district, which does not permit Deiter's intended use.[2] A portion of the property is also situated in a flood plain. Section 595-144F(3)(1) of the Ordinance sets forth prohibited uses in the flood plain and provides as follows:

> Prohibited uses. Notwithstanding any of the provisions of this article, within any identified floodplain area no permit shall be issued nor shall any variance be granted for:
>
> ***
>
> (3) Any new or substantially improved structure which will be used for the production or storage of any of the following dangerous materials or substances; or which will be used for any activity requiring the maintenance of a supply of more than 550 gallons or other comparable volume of any of the following dangerous materials or substances on the premises; or will involve the production, storage or use of any amount of radioactive substances or any of the following dangerous materials or substances on the premises, including:
>
>> (1) Petroleum products (gasoline, fuel, oil, etc.)

---

[2] The purpose of the RC district "is to provide for adequate protection and buffering of the City's waterways and other natural resources[,] assist in flood management, protect environmentally sensitive areas, and meet the need for local and regional greenways, open space, and recreation within the City." (Ord. §595-87A(1).)

2

In accordance with §595-143B(3) of the Ordinance, "[n]o use may be established in any flood hazard area unless authorized by the [ZHB], upon filing of an application and following procedures for special exception permits."

The application indicates that Deiter sought permission to install the 30,000-gallon storage tank based on "[§]595-143B(3) [of the Ordinance], new use in a flood plain" and "expansion of a legal nonconforming use-[§]595-46D [of the Ordinance]." (Application, 1/31/14, at 1.)

At the ZHB hearing, James Deiter testified that there are nine storage tanks on the property with a combined capacity of 105,020 gallons. The storage tanks have been on the property since the 1940s or 50s, and no additional storage tanks have been added since Deiter purchased the property in 1987. Mr. Deiter stated that the proposed 30,000-gallon storage tank would not exceed 50% of what is already on the property, either in number or in storage capacity. (ZHB's Findings of Fact, No. (7)c.)

Jerry Weslowski, Deiter's propane manager, testified that to his knowledge, no flooding has ever occurred at the property and that the storage tank would not be in the actual flood plain. Weslowski further stated that the storage tank would comply with all fire safety manuals and that a fence would surround the storage tank. (*Id.*, No. (8).)

Cindy Cawley, the City's code administrator, testified that the property has always been used for the storage of oil. Cawley stated that the storage of

3

petroleum products became a legal, nonconforming use in 2008 when the Ordinance was updated. (*Id.*, No. (7)a, b.)

Objectors also testified at the ZHB hearing. A representative of Moore testified that Moore is situated 25 feet from the property and that it would be included in the evacuation area if the proposed storage tank developed a leak. (Notes of Testimony (N.T.), 5/19/14, at 36.) Maryanne Barrett, who lives three blocks from the property, also objected because the proposed storage tank would be close to residences. (*Id.* at 37.)

The ZHB denied Deiter's request to install the propane storage tank. Specifically, the ZHB concluded that Deiter did not meet its burden in proving entitlement to a special exception.[3]

Deiter appealed to the trial court, which permitted the City and Moore to intervene. The trial court determined that §595-144F(3) of the Ordinance specifically prohibits the establishment of any new structure to store petroleum products in a flood plain. The trial court further determined that the Propane and Liquefied Petroleum Gas Act (Act 61)[4] does not preempt the Ordinance. "By its express language, [s]ection 15(b)(2) of Act 61, 35 P.S. §1329.15(b)(2), specifically bars a

---

[3] Specifically, the ZHB found that Deiter failed to prove that: there would be no danger to life and property due to increased flood heights and velocities in times of flooding; potentially dangerous material would not be swept downstream; the susceptibility of the property and its contents to flood damage was minimal; flood damage to individual property owners would be minimal and; the proposed use is compatible with existing development.

[4] Act of June 19, 2002, P.L. 421, No. 61, *as amended*, 35 P.S. §§1329.1-1329.13.

4

municipality from adopting or enforcing any law which regulates *the location* of [liquefied petroleum gas] containers, except a municipality shall retain the right to determine which zoning district would be most appropriate for such use." *JoJo Oil Company, Inc. v. Dingman Township Zoning Hearing Board*, 77 A.3d 679, 690 (Pa. Cmwlth. 2013), *appeal denied*, __ A.3d __ (Pa., No. 791 MAL 2013, filed April 2, 2014).

The trial court then concluded that Deiter's proposed use was a natural expansion of a pre-existing, nonconforming use and that Deiter met its burden under §595-46D of the Ordinance. Specifically, Deiter proved that fuel oil has been stored on the property since before the 2008 Ordinance revision and that the proposed use expansion does not exceed 50% of the initial use from the date it first became nonconforming. Because the proposed use was a natural expansion of a pre-existing nonconforming use, and not a new use the trial court determined that the need for a special exception was negated. Therefore, the trial court did not address that issue. The trial court reversed the ZHB's decision and granted Deiter's request to install the 30,000-gallon storage tank. Moore filed a petition for reconsideration, which the trial court denied. This appeal followed.[5]

Initially, we address Moore's argument that the trial court erred in determining that the 30,000-gallon storage tank qualifies as a legal expansion of a nonconforming use.

---

[5] Where, as here, the trial court does not take additional evidence, this court's review is limited to determining whether the ZHB committed an abuse of discretion or an error of law. *Amerikohl Mining, Inc. v. Zoning Hearing Board of Wharton Township*, 597 A.2d 219, 221 (Pa. Cmwlth. 1991).

Section 595-45 of the Ordinance provides that "[t]he lawful use of a building or structure or the lawful use of any land as existing and lawful at the time of the enactment of this chapter or, in the case of an amendment to this chapter, then at the time of such amendment may be continued except as hereinafter provided although such use does not conform to the provisions of this chapter or subsequent amendments." Section 595-46D of the Ordinance allows for the expansion of nonconforming uses and provides that:

> Nonconforming uses of land shall not be extended and structures used in connection with such uses shall not be . . . enlarged, except in accordance with the following provisions:
>
> ***
>
> (2) Any increase in volume or area shall not exceed an aggregate of more than 50% of the volume or area existing at the date the use became nonconforming during the life of the nonconformity.

The party claiming a nonconforming use has the burden of establishing both its existence and legality before the enactment of the ordinance at issue. *Lamar Advantage GP Company v. Zoning Hearing Board of Adjustment of the City of Pittsburgh*, 997 A.2d 423, 438 (Pa. Cmwlth. 2010). Here, Moore claims that Deiter failed to prove when the use became nonconforming and that the proposed use does not exceed 50% of the initial use from the date it first became nonconforming. We disagree.

As to when the use became nonconforming, Cawley testified, and the ZHB found, that the property, which has always been used for the storage of oil,

6

became nonconforming in 2008 when the Ordinance was updated. (ZHB's Findings of Fact, No. (7)a, b; N.T., 5/19/14, at 10.) Cawley further testified that Deiter's use is a legal, nonconforming use and that the proposed expansion is not greater than 50% of what is already there. (N.T., 5/19/14, at 8-9.)

Mr. Deiter's testimony supported Cawley's. Mr. Deiter testified that since the 1940s or 50s, storage tanks were on the property and that the existing nine storage tanks were on the property when Deiter purchased it in 1987. Deiter has not added any storage tanks since the purchase. (ZHB's Findings of Fact, No. (7)c.)

Although the ZHB stated that the issue of when Deiter's use became nonconforming was not before it, the trial court concluded that Deiter met its burden of proving a legal, nonconforming use. Specifically, according to Cawley's uncontradicted testimony, the property has "'always' been used for the storage of oil" and "the (present) use for storage of oil became a legal nonconforming use in 2008 when the . . . Ordinance was updated." (*Id.*, No. (7)a, b.) Here, based on the testimony of Cawley and Mr. Deiter, who confirmed the property's nonconforming status, the trial court did not err in concluding that Deiter's use became nonconforming in 2008. Additionally, the trial court did not err in concluding that the 30,000-gallon storage tank does not exceed 50% of the combined capacity of the nine pre-existing storage tanks, which total 105,020 gallons.

Finally, Moore argues that Deiter failed to meet the requirements for a special exception regarding a new use in a flood plain. As found by the trial court, however, Deiter did not need to obtain a special exception because the use was a pre-

7

existing, nonconforming use, not a new use. As such, even if preserved, we will not address the issue.[6]

Accordingly, we affirm.

_____
ROCHELLE S. FRIEDMAN, Senior Judge

---

[6] Because of our determination on the nonconforming issue, we need not address Deiter's argument that the trial court erred in concluding that the challenged sections of the Ordinance are not preempted by Act 61.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Deiter Family, L.P. :
: No. 265 C.D. 2015
v. :
:
City of Easton Zoning Hearing :
Board and City of Easton and :
W. B. Moore, Inc. :
:
Appeal of: W. B. Moore, Inc. :

# O R D E R

AND NOW, this 19th day of November, 2015, we hereby affirm the January 27, 2015, order of the Court of Common Pleas of Northampton County.

_____
ROCHELLE S. FRIEDMAN, Senior Judge